MARINER VS. THE MILWAUKEE & ST. PAUL RAILWAY COMPANY.

(1.) *Equitable estoppel.* (2.) *May be set up by defendant in ejectment.*

1. One who had bought land at a judgment sale in favor of A, afterwards took an assignment of a judgment against the same debtor in favor of B, which included the amount of A's judgment; and, having successfully resisted an application to the court, by a receiver of said debtor's property, to be allowed to discharge the B judgment by paying the amount thereof, *less* that of the A judgment, he was paid the B judgment in full. *Held*, that he was equitably estopped from claiming the land under the A judgment.

2. This equitable estoppel may be set up by defendant in an action of ejectment.

APPEAL from the Circuit Court for *Milwaukee* County.

Ejectment for the west sixty feet of lot 6, block 41, in the second ward of the city of Milwaukee. Plaintiff claims under a judgment sale made in December, 1858, in the suit of one Carney against the La Crosse & Milwaukee Railroad Company. (See 15 Wis. 303.) Defendant claims under a judgment sale subsequently made in a suit of one Cleveland against the same railroad company; and also claims that plaintiff is estopped from setting up his title under the Carney judgment. The following facts appear from the record: In June, 1857, the La Crosse Company, being the owner of said block 41, entered into a contract with Hill & Rudd, by which the latter were to erect, and did erect, a block of buildings upon it, covering the land in suit with other parts of the block. Carney furnished Hill & Rudd with bricks for this block, and in November, 1857, filed his petition for a lien for the bricks furnished, and in September, 1858, in an action against the company alone, obtained a judgment to enforce said lien, and at the judgment sale of the land covered by said buildings, in December, 1858, bid in the same himself for the amount of his claim, and took the sheriff's deed. In June, 1858, Hill & Rudd filed their petition for a lien, and in September, 1858 (prior to the Carney judgment), obtained judgment for their entire claim against the company, including the amount claimed by Carney as due from them for the bricks furnished by him. This judgment, by its terms, gave Hill & Rudd a specific lien on the whole of block 41. In December, 1858, after the sale on the Carney judgment, one Noxon, at the request of Hill & Rudd, purchased the premises of Carney, and at the same time Hill & Rudd assigned their judgment against the company to the plaintiff, to secure Noxon from loss by reason of the money paid Carney and other moneys advanced to Hill & Rudd. In

January, 1859, the La Crosse Company moved the court to abate the judgment of Hill & Rudd against it by the amount of the Carney judgment, and also to modify the judgment so as to give the plaintiffs therein a specific lien upon only a portion of said block 41, including said buildings. The court granted this motion, and on the 26th of January, 1859, the premises last mentioned were sold by the sheriff under such modified judgment to the plaintiff, and a sheriff's deed executed to him. On the same day Hill & Rudd appealed from the order abating and otherwise modifying their judgment, and the order was wholly reversed by this court, and the cause remanded with directions to enter a judgment for the full amount of Hill & Rudd's claim, without regard to the Carney judgment, and to make the same a lien on one acre of land to be taken from the south end of said block 41 (which includes the premises here in dispute). (See *Hill et al. v. La Crosse & Milwaukee R. R. Co.*, 11 Wis. 214–229.)* While this appeal was pending, the present plaintiff purchased Noxon's interest and one-half of the Hill & Rudd judgment. Upon filing the remittitur of the supreme court, and procuring the judgment to be modified as therein ordered, he caused execution to be issued on said judgment and delivered to the sheriff, with a direction to collect the whole amount by sale of the premises described in the judgment. On the 30th of August, the receiver of the La Crosse Company and the plaintiff's attorney entered into a stipulation that the former should pay the judgment in installments, running till December, 1860; and such installments were paid down to and including November 1, 1860. On the 3d of that month, said receiver moved the court that said judgment be satisfied upon

---

* It would seem, from the remarks of PAINE, J., in delivering the opinion of this court in that case (11 Wis. 229), that the court supposed the Carney claim to be still in judgment only, and was not made aware that it had been satisfied by a sale on execution.      REP.

payment of the balance due thereon, less the amount of the Carney judgment and costs of the sale thereunder, with interest from the day of said sale. This motion was denied on the 17th of the same month. Meanwhile, on the 10th of that month, plaintiff had informed said receiver that he should insist upon his title under the Carney judgment; on the 13th, the receiver paid the balance of the Hill & Rudd judgment without any deductions, and the plaintiff accepted the same, except the amount made on the above mentioned sale under the Hill & Rudd judgment, which last amount he refused to receive from the sheriff; on the 14th, the receiver, in the name of the La Crosse Company, moved the court in the case of *Carney v. The La Crosse Company*, to vacate the judgment and the sale made thereunder. Due notice of this application was given to the present plaintiff, and he appeared and resisted the same, and it was denied; and upon appeal to the supreme court, the order of denial was affirmed. (See *Carney v. La C. & M. R. R. Co.*, 15 Wis. 503–510.)

By various subsequent proceedings, not important here, the title of the La Crosse Company to said block 41, and the possession thereof, passed to the present defendant.

The circuit court, in the present case, held that the plaintiff was estopped from setting up his legal title, and dismissed the complaint. From this judgment the plaintiff appealed.

*E. Mariner*, appellant, in person, argued:. 1. That inasmuch as there was no pretense that he had ever in any way promised or suggested that he would give up his title to the property under the Carney judgment on any conditions; inasmuch as, on the contrary, he had avowed his intention to hold the property before the money was paid, and resisted the motion of November 3d, 1860, to have the Carney claim deducted; and inasmuch as it was perfectly plain from the record that

the money was paid with full understanding of the facts—there could not possibly be an estoppel *in pais* against him, and none other was contended for. *Gove v. White*, 20 Wis. 425. 2. That the decisions upon the two motions made for that purpose in the suit of Hill & Rudd, constituted an estoppel of record against the La Crosse Company from claiming that the amount of the Carney claim should be deducted from the Hill & Rudd judgment; while the decision denying the motion made in the suit of Carney to vacate the judgment and sale therein, also estopped the defendant from denying the validity of that judgment and sale, and of plaintiff's title thereunder.

*John W. Cary*, for respondent, to the point that plaintiff, by receiving payment of the full amount of the Hill & Rudd judgment, and resisting the application to have the Carney judgment deducted, was estopped from claiming title under that judgment, cited *Smith v. Warden*, 7 Harris, 430; 1 Story's Eq. §§ 385, 388, 389; *Farmers' L. & T. Co. v. Walworth*, 1 Coms. 433; Phillipps' Ev. (Edward's ed.), note 129.

COLE, J. To defeat the plaintiff's recovery, the answer sets up various matters in the nature of a suit in equity under the old practice, and therefore the merits of that defense must be decided upon equitable grounds. If for any reason it would be unjust and unconscionable to allow the title of the plaintiff to prevail as against the facts stated in the answer and proven on the trial, equity will relieve against it.

It appears that previous to the issuing of execution on the Hill & Rudd judgment, the plaintiff had acquired the title under the Carney sale. He then issued execution for the full amount of that judgment, with interest and costs, and delivered it to the sheriff to be collected. The sheriff, in pursuance of the command in the execution, advertised the premises described in the judgment for sale; and, in order to prevent a sale, the

receiver (for the benefit of the creditors of the La Crosse & Milwaukee Railroad Company) then in possession of the property as such receiver, paid the full amount of the execution and costs without any deduction of the amount made either upon the Carney sale or at the sale on the Hill & Rudd judgment, January 26, 1859. So that the case presented is this: After the plaintiff had procured the title under the Carney sale, and after the Hill & Rudd judgment had been assigned to him, which included the amount due Carney for materials furnished, he caused execution in the case of Hill & Rudd to be issued to collect the entire judgment, and the amount in fact was collected by the sheriff, and the execution fully satisfied. For one purpose he deliberately elected to treat the Carney judgment as unsatisfied and the sale of no effect, while for another purpose he affirms the validity of the sale and insists upon his title under it. These inconsistent and repugnant claims, we think, cannot be maintained in a court of equity. It would be contrary to every principle of equity and justice to allow the plaintiff to disregard the Carney sale and collect the money due upon the judgment, and then turn round and treat the sale as valid, and derive all the benefit which the sale could confer if the judgment had never been paid except by the sale. The American annotator, in his note to the *Duchess of Kingston's case* (2 Smith L. Cases, 6 Am. ed.), on page 764, uses the following language, which we think entirely applicable to the question before us. He says: "That a man must choose between different and inconsistent rights, and cannot assert one after he has deliberately elected to enforce the other, is a rule of natural justice which was known to the common law at an early period, and has since been liberalized and enlarged by equity. *Martin v. Ives*, 17 S. & R. 364, 368. Thus a party will not be permitted to impugn a decree or title which he has set up or relied on in a prior proceeding, if the effect will be to place other persons in a

worse position than they would have held if he had maintained the ground originally taken. *Martin v. Ives; Smith v. Jack*, 2 W. & S. 101; *Ullery v. Clark*, 6 Harris, 148; *Bailey v. Bailey*, 8 Wright, 274." In *Martin v. Ives*, GIBSON, C. J., when speaking of the application of this principle of election, says: "Estoppels are sometimes said to be odious; and it has been affirmed that there is no such thing as an equitable estoppel. But the doctrine of election, which prevents a party from claiming in repugnant rights, and which has been so advantageously introduced into courts of equity, is manifestly an extension of the principle. In courts of law they are for the most part reconcilable to the purest morality, and when they produce neither hardships nor injustice, they merit indulgence, if not favor." Page 366. See also *Smith v. Worden*, 7 Harris, 424; and *Spragg v. Shriver*, 1 Casey, 282.

But the plaintiff insists that nothing like an equitable estoppel can arise in the case, because he has never promised to give up his title to the property, but on the contrary avowed his intention to hold it before the money was paid. True, he resisted the motion made by the receiver that the Hill & Rudd judgment be satisfied upon the payment of the balance due thereon, less the amount of the Carney judgment and costs of sale, with interest from the date of sale. But this was only declaring, in a most distinct manner, that for some reason he did not intend to stand by the Carney sale, and that he was willing to give up any title he had acquired under it. At all events, a court of equity will so interpret his conduct in the matter; for his only just ground for resisting that motion and exacting the money due upon the Carney judgment in the Hill & Rudd case, was that the Carney judgment had never been satisfied. A court of justice, in denying the motion to reduce the Hill & Rudd judgment by the amount of the Carney judgment, could not have intended to aid the plaintiff in again collecting a judgment already satisfied by a

sale of property under it. And the plaintiff, having had the choice of different and inconsistent rights, and having deliberately elected to collect the amount of the Carney judgment in the Hill & Rudd case, must abide the consequences. He cannot now . also insist upon having the property sold upon that judgment.

The judgment of the Circuit Court must therefore be affirmed.

*By the Court.*—Judgment affirmed.