BARKER, Administrator, etc., vs. BUHRE.

*November 7 — November 25, 1884.*

*Gift* causa mortis: *Evidence: Party in interest.*

The only matter in controversy upon the second trial of an action of replevin being whether the plaintiff's intestate delivered a note and mortgage to one B. as a gift *causa mortis* to the defendant, evidence as to the relations existing between B. and the intestate and how far she had been the recipient of the bounty of the latter, was inadmissible, although upon the former trial B. had been a real party in interest as claiming to be the owner of other property for which the action was brought, but which was in no way involved on the second trial.

APPEAL from the Circuit Court for *Walworth* County. The case is thus stated by Mr. Justice CASSODAY:

"John N. Pease died December 11, 1880. The plaintiff brings this action, as administrator, to recover a certain note and mortgage of $500, and interest, executed by the defendant and wife, January 1, 1873, payable to said deceased, and which, with other personal property, amounting in the aggregate to about $5,000, as in the complaint alleged, belonged to the deceased at the time of his death, and of which the defendant had possession, and wrongfully detained the same from the plaintiff.

"The defendant answered, in addition to denials, in effect, that the $500 note and mortgage executed by himself were his own property, and that all the other property mentioned and described in the complaint was the property of one Lucy A. Barlow, and that he had taken possession thereof and retained the same at her request and as her property.

"On the first trial of the cause the jury disagreed, and thereupon the parties, by stipulation in writing, settled and adjusted the ownership and right of possession of all said personal property except said mortgage and note of $500, which was still left in dispute and claimed by both parties.

On the trial of that issue under that stipulation the court submitted to the jury a special verdict, consisting of several questions, which were answered by the jury to the effect that: (1) John N. Pease did not during his last illness, on or about December 7, 1880, and in contemplation of death, take the note and mortgage in controversy in this action, and hand them to Lucy A. Barlow with directions to her to give them to the defendant in case of the death of him, the said John N. Pease; (2) and no such thing was done by said Pease with the intent to thereby give said note and mortgage to the defendant; (3) Lucy A. Barlow did not take said note and mortgage and keep them in her custody and possession until the death of said Pease; (4) nor deliver them to the defendant after the death of said Pease, in pursuance of any such directions; (5) at the commencement of this action the plaintiff was entitled to the possession of said note and mortgage; (6) and their value was $638.06; (7) the plaintiff had sustained damage by reason of the unlawful withholding said note and mortgage, in the sum of six cents; (8) said note and mortgage, after December 7, 1880, were mingled with other property of said deceased."

From the judgment entered upon such verdict in favor of the plaintiff, the defendant appealed.

For the appellant there was a brief by *C. S. French* and *Fish & Dodge*, and oral argument by *Mr. Fish.*

*J. V. Quarles*, of counsel, for the respondent.

CASSODAY, J.   The evidence in behalf of the plaintiff seems to be sufficient to sustain the verdict.   There are some irregularities in the admission and exclusion of evidence, however, to be considered.   It appears from the record before us that after Lucy A. Barlow, the principal witness on the part of the defendant, had been examined, the plaintiff was allowed, by way of impeaching her, to prove by a son of the deceased, in effect, that he was at her house soon after his

father's death, when she produced two packages, one of which, being sealed up, she represented as her own private papers, and the other of which she represented as papers belonging to the estate; and that, as the papers were read off, the note and mortgage in question were found to be in that package; that the defendant, being asked how that was, Miss Barlow spoke up to the defendant and said: "That's yours; I didn't think anything about it;" but that neither said anything about that note and mortgage having been disposed of by the deceased.  Some parts of this testimony were objected to and others not.  It does not appear from the record before us that any foundation for such impeaching testimony had been laid by first putting the proper questions to Miss Barlow.  It was claimed on the oral argument by the learned counsel for the plaintiff that such questions were put, and he verified such claim by reading from the reporter's minutes.  Unfortunately for the plaintiff, however, those portions of the minutes were not incorporated into the bill of exceptions, and hence we are not at liberty to consider them.  But the plaintiff will not suffer from the oversight, since we must reverse the judgment on other grounds.

The stipulation between the parties had, prior to the last trial, eliminated from the issues made by the pleadings all controversy about any of the property therein mentioned, except this note and mortgage.  The only controversy in relation to them was whether the deceased, in his last sickness, and in contemplation of death, voluntarily surrendered and extinguished the note and mortgage by actually delivering them to Miss Barlow as a gift *causa mortis* to the defendant.  *Wilcox v. Matteson*, 53 Wis. 23; *Basket v. Hassell*, 107 U. S. 602; *Brunn v. Schuett*, 59 Wis. 260, and cases there cited.  As to that controversy, Miss Barlow was not a party, but a mere witness; as to the other property, she was probably upon the first trial treated as the real party in interest,

and hence considerable latitude given by way of inquiring into the relations which had for many years existed between her and the deceased, and how far she had been the recipient of his bounty. Upon the last trial she was simply a witness, and hence most, if not all, of those questions were out of the case. Upon that trial she should have been treated as any other witness giving testimony under like circumstances. The examination of her and all other witnesses should have been confined to the only question then in controversy. It is very evident this was not done. On the contrary, much testimony was admitted, against objection on the part of the defense, which had no bearing upon that issue. Thus, she was asked, in effect, who purchased the house where she lived, and whether she came west at the time the deceased bought that house. So Dr. Scott was asked, in effect, what the deceased said to him in regard to his financial and money matters. To this question the doctor testified, in effect, that a few days before he died Mr. Pease asked Miss Barlow for his pocket-book, which she gave to him, and that it was a very large one, with a very large roll of money in it. These are a few samples of the lines of inquiry permitted by the trial court. We think it may be fairly inferred that there was testimony admitted which had the effect to prejudice the defendant's case before the jury. For these reasons the judgment of the circuit court must be reversed, and the cause remanded for a new trial.

*By the Court.*— It is so ordered.