WARREN and another, Appellants, vs. LANDRY and others, Respondents.

*March 14 — April 25, 1889.*

*Land contract: Unauthorized cutting of timber: Ratification: Election between remedies: Waiver of the tort: Pleading.*

1. Under an unauthorized contract for the sale and conveyance of plaintiff's land to the defendant L., the latter entered upon the land and cut timber therefrom in excess of the amount which the contract allowed him to cut. With knowledge of all the facts the plaintiffs ratified the contract, and afterwards brought an action for its strict foreclosure and obtained judgment therein. *Held*, that they could not thereafter maintain an action of trespass for the excessive cutting of timber.

2. Where a judgment was pleaded as an equitable defense by three defendants, but was not pleaded in the separate answer of the fourth, it was at least admissible in behalf of the former; and if the plaintiffs wished to avail themselves of the defect in the latter's answer the objection should have been specific, so that it might have been obviated by amendment.

APPEAL from the Circuit Court for *Lincoln* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

March 10, 1881, one Robert Patrick, claiming to be the agent of the plaintiff *George H. Warren*, and in his name, entered into a contract in writing with the defendant *John Landry*, to the effect that said *Warren* therein agreed to convey by warranty deed to said *Landry*, to be deposited in McCulloch's bank at Stevens Point or delivered to *Landry* within thirty days thereafter, the S. ½ of the N. E. ¼, and the N. E. ¼ of the S. E. ¼, and the E. ½ of the S. W. ¼, in section 22, township 37 N., of range 5 E., and for which *Landry* was to pay *Warren* $1,500, of which amount $700 was to be deposited in said bank to the credit of *Warren*, and there remain until such delivery or deposit of such deed, and the balance to be paid on or before June 1, 1882,

with interest after one year at the rate of six per cent. per annum; that upon such deposit of said $700 *Landry* was to have the right to cut from said lands during the then present season not exceeding 200,000 feet of the timber thereon; that *Landry* therein agreed, upon the delivery of such deed, to execute to *Warren* his notes for the unpaid balance of such purchase price, secured by mortgage on said lands or by satisfactory indorsement of said notes; that it was agreed therein that *Landry* might at any time within ten days thereafter cancel such contract by notice.

Subsequently the plaintiffs commenced an action against said *Landry* and said McCulloch to ascertain the amount due them from *Landry* under the contract, and to bar and strictly foreclose said *Landry* and McCulloch of all right, title, interest, or equity of redemption in the lands, unless the defendants paid, etc., and for an injunction; and that the $700 be adjudged to be the property of the plaintiffs, and paid over to them. *Landry* and McCulloch answered the complaint in that action.

Upon the trial of that action the court made and filed therein findings of fact and conclusions of law November 29, 1886, to the effect that the contract mentioned was executed March 10, 1881, as stated; that at that time the plaintiffs were the owners of said lands described; that they were entered in the name of the plaintiff *Langdon*, but for the plaintiffs jointly; that there had been no deed or transfer thereof, except the deed executed and deposited with McCulloch, to be delivered to *Landry* upon his payment for the lands; that Patrick did not have authority on behalf of the plaintiffs to make the contract; that the plaintiffs were notified of the execution of the contract, and ratified the same by letter from *Warren* to Patrick in April or May, 1882; that about May 1, 1882, and thereafter, *Landry* offered to pay the plaintiffs the $800, with the interest, and to allow the plaintiffs to draw and receive from McCulloch

the $700, upon the execution and delivery to *Landry* of such deed executed by the plaintiffs or the one holding the title; that April 7, 1884, after negotiations and correspondence between the parties, the plaintiffs accepted said offer and agreed to deed the lands upon the terms stated; that the plaintiffs had since been ready to so deed the lands to *Landry* upon such payment, and offered so to do before said suit; that *Langdon* did execute such deed to *Landry*, and deposited the same with McCulloch, to be delivered to *Landry* upon such payment, and notified *Landry* thereof; that said contract, as modified by the agreement of the parties as stated in such findings, was ratified by the plaintiffs and *Landry;* that *Landry* executed and deposited with McCulloch the notes and mortgage and a draft for $700 within the time mentioned in said contract; that *Landry* had refused and neglected to pay said $800 and interest, and to receive the conveyance, or to allow McCulloch to pay or deliver the $700 draft to the plaintiffs, since they had accepted his offer; that McCulloch still held the $700 draft; that *Landry* had failed to pay any part of said purchase money; that the amount due and unpaid upon the purchase price was $1,500, with interest on $800 thereof from April 7, 1884, at six per cent.

As conclusions of law, the court found therein that the plaintiffs were entitled to receive the $700 draft, or the proceeds thereof, to apply on the contract, and in addition thereto the $800 with interest thereon at six per cent. from April 7, 1884; that in default of the payment of the same, on or before June 1, 1887, the said *Landry*, and all persons claiming under him, be barred and strictly foreclosed of all right, title, and interest in said real estate, and that the plaintiffs were entitled to judgment accordingly unless *Landry* made such payment within the time named; that upon the delivery of the draft or payment of the $700 and $800 and interest the plaintiffs should execute and deliver

to *Landry*, or deposit with the clerk, such deed, within the time therein fixed for *Landry* to pay in full, conveying the lands free of all incumbrance, except taxes levied and assessed thereon subsequently to March 10, 1881; that neither party recover costs in the action.  Judgment was thereupon ordered accordingly, and the same was entered therein December 3, 1886.

Thereupon, and on December 9, 1887, the plaintiffs commenced this action against *Landry*, *Alexander* and *John Stewart*, and *Walter Alexander* to recover $9,600 damages, the value thereof, for 1,600,000 feet, board measure, of pine timber wrongfully and unlawfully cut down and manufactured into saw-logs during the logging seasons of the winters of 1880–81, and 1881–82, by said *Landry*, and by him sold and delivered to said *Stewarts* and *Alexander*, who received and converted the same to their own use, knowing that the same had been so wrongfully cut from the plaintiffs' lands.  Before the commencement of this action the plaintiffs demanded the return of said logs and timber, but the defendants neglected and refused to return the same.

*Landry* answered, admitting that in 1881, and subsequently to March 15, 1881, he cut and removed therefrom not exceeding 200,000 feet; that during the logging season of 1881–82 he cut and removed therefrom not exceeding 1,500,000 feet; that the stumpage value thereof did not exceed $1 per 1,000 feet; that he justified such cutting and removal under the contract stated and the performance thereof on his part; and otherwise put in a general denial. The answer of the defendants the *Stewarts* and *Alexander* consisted of a general denial, and denials of the value alleged and everything tending to show that they were not *bona fide* purchasers of the logs, and also admissions of having purchased from *Landry* logs cut by him between March 15, 1881, and April 1, 1882, 1,600,000 feet.  They also allege

the contract with *Landry* mentioned; that *Landry* per-
formed the conditions of the contract and had the right to
cut the logs; that they purchased the logs in good faith
and without any knowledge or information that the plaint-
iffs had any right thereto; and also said foreclosure action
and judgment in bar of this action.

Upon the trial of said last-named action by the court,
a jury having been waived, it was found as matters of fact,
in addition to the facts found in said foreclosure action, that
Patrick had no authority to execute the contract at the time
it was signed; that *Landry* cut and removed from the lands
200,000 feet in the season of 1880–81, and in the season of
1881–82 he cut and removed from the land the balance of
the timber, and sold and delivered the same to the *Stewarts*
and *Alexander*, and received his pay therefor long prior to
this action,— probably in the spring of 1882; that at the
time of such cutting *Landry* had in fact no authority to cut
the timber, but the *Stewarts* and *Alexander* were ignorant
of that fact, and bought the logs from him supposing him
to be the undisputed owner thereof, but before they had
fully paid therefor they were notified by the plaintiffs that
they claimed to own them and should look to them for pay
therefor; that after the timber had all been cut, and in
April or May, 1882, and while the $700 and the notes and ·
mortgage still remained in McCulloch's bank, the plaintiffs
ratified the said agreement of March 10, 1881; that about
May 1, 1882, the deed from the plaintiffs to *Landry* not
having been delivered or deposited as agreed, *Landry* pro-
posed to pay the $800 and interest and allow the plaintiffs
to draw the $700 on condition that they should at once
execute and deliver the deed, which proposition was ac-
cepted by the plaintiffs in April, 1884, and subsequently
they made and tendered the deed to *Landry*, and demanded
payment as agreed, but *Landry* did not pay the $800 and

interest, and the deed was never delivered; that the strict foreclosure action was commenced, tried, and judgment entered therein as stated; that *Landry* treated the agreement as valid from the outset, performed the conditions thereof, entered upon the lands, cut the timber, and disposed of it to his codefendants; that, after the timber had been so cut, removed, and disposed of, the plaintiffs, with full knowledge of such cutting, removal, and sale, ratified said contract, and executed and deposited said deed as required; that the amount of timber so cut and removed by *Landry*, and by him sold to his codefendants, over and above the 200,000 feet which the contract gave him the right to cut the first season, was 1,400,000 feet, of which one third was Norway pine of the value of $1 per 1,000 feet, and the other two thirds white pine of the value of $1.50 per 1,000 feet.

As conclusions of law, the court found, in effect, that the ratification of the contract of March 10, 1881, by the plaintiffs related back to the time of its unauthorized execution; that the rights of the parties were to be determined in all respects as if that agreement had been originally executed by Patrick with full authority to do so from the plaintiffs; that the cutting of the timber by *Landry* was lawful, and the other defendants obtained a valid and unincumbered title to the logs purchased from him; that the plaintiffs were not entitled to recover in this action; that judgment be entered in favor of the defendants and against the plaintiffs, dismissing this action, with costs to be taxed. From the judgment entered thereon accordingly the plaintiffs appeal.

For the appellants there were briefs by *Bump & Hetzel*, and oral argument by *H. C. Hetzel.*

For the respondents there was a brief signed by *Silverthorn, Hurley, Ryan & Jones,* and oral argument by *T. C. Ryan.*

CASSODAY, J.   The findings of the court are not assailed, except in so far as it is found that the plaintiffs ratified the Patrick contract after the timber had been cut, removed, and disposed of, with full knowledge of such cutting, removal, and sale.   The plaintiff *Warren* testified, in effect, that he had a conversation with *Stewart* respecting the logs cut from these lands in May, 1882, and then told him that he understood that *Stewart* had purchased the logs cut by *Landry* on said lands, and that the plaintiffs would look to him for their pay; that he received such information from a letter written by Cochran, April 28, 1882; that he saw Cochran in May, 1882, and was by him notified that the timber was mostly cut off the land at that time; that he thereupon made inquiries, and found that *Landry* had logged there; that at that time *Stewart* told him he had bought *Landry's* logs, and paid him some thereon; that subsequently he authorized his attorneys to make the verbal agreement; that he made an arrangement with *Landry* that if he paid over the $700, and the $800, with interest, he would deed him the lands; that subsequently the suit for the strict foreclosure of the contract was commenced; that, after they got judgment in that suit, their attorneys received the $700 pursuant to that decree, which determined that there was due the plaintiffs upon the contract in addition the $800 and interest.   We must hold that the several findings of fact are all supported by the evidence and must be treated as verities in the case, and hence that the contract was in fact ratified, as found by the court.

The theory of the plaintiffs is that, assuming that the Patrick contract was valid when made, yet it only authorized the cutting of the 200,000 feet; and that all cut in excess of that amount was wrongfully cut, and for which *Landry* and the other defendants became liable in trespass. Assuming this to be true, still it was competent for the

plaintiffs, with full knowledge of the fact that the lands had been substantially stripped of the timber, to waive the tort and pursue their remedies on the contract. This is precisely what was done, not only by the negotiations and agreements, but by the action for a strict foreclosure of the contract, and by virtue of which they obtained the $700 as a part of the contract price for the lands and also the lands; and it may be that in such equitable action the plaintiffs might have recovered, as against *Landry*, the actual value for all timber taken from the lands in excess of the amount actually authorized by the contract, as in *Hoile v. Bailey*, 58 Wis. 452–456. But that question is not before us for consideration. The question here presented is whether the plaintiffs, after having thus ratified the contract and pursued a lawful remedy under it, were still at liberty to go back and maintain this action of naked trespass for such excess, the same as though *Landry's* cutting of such excess had never been authorized nor sanctioned with full knowledge of the facts by such subsequent negotiations, agreements, foreclosure, and judgment. The two remedies thus sought to be made available are certainly inconsistent with each other. The rule is universal that where a party has the choice between two inconsistent remedies or causes of action, and he deliberately adopts the one, such election becomes conclusive upon him and precludes him from subsequently adopting the other. *Mariner v. M. & St. P. R. Co.* 26 Wis. 84; *Hollehan v. Roughan,* 62 Wis. 64; *Kaehler v. Dobberpuhl,* 60 Wis. 261; *Dunks v. Fuller,* 32 Mich. 242; *Nield v. Burton,* 49 Mich. 53; *Farwell v. Myers,* 59 Mich. 179. Besides, *Landry* having deposited the $700, and the notes and mortgage of $800, as agreed in the contract, and the plaintiffs, with full knowledge of the facts, having subsequently ratified the agreement and deposited the deed as stated, such ratification related back to the time of the making of the contract; and hence the rights and liabilities

of the parties in equity, as to the cutting and removing the timber, must be regarded the same as though the deed, as well as the notes and mortgage and the $700, had all been deposited in the bank within the time contemplated in the original contract.    It is to be remembered that the defense on the part of the *Stewarts* and *Alexander* is equitable in its nature.    This being so, the relation of the parties in equity, upon such ratification, was that of mortgagor and mortgagee, instead of that of vendor and vendee.

It is claimed that, as the strict foreclosure judgment was not pleaded in the separate answer of *Landry*, it is not, as to him, available as an equitable defense.    But it was so pleaded by the *Stewarts* and *Alexander*, and hence was admissible in their behalf.    If the plaintiffs wished to avail themselves of such defect in *Landry's* answer, the objection should have been specific, in which event the same might have been obviated by an amendment.    Besides, we are inclined to think it was admissible upon that answer, since it tended to prove that the trespass alleged had in fact been waived by the plaintiffs.

*By the Court.*— The judgment of the circuit court is affirmed.