CROOK, Administrator, Appellant, vs. THE FIRST NATIONAL BANK OF BARABOO, Respondent.

*September 1 — September 27, 1892.*

*Gift of money in bank: Delivery: Election between remedies.*

1. A bank gave to one A. a writing, signed by the cashier, acknowledging the receipt from A. of four bonds "to be sold and the proceeds placed to her credit . . . ; also for collection $221 in coupons." Afterwards A. indorsed upon such receipt an order, signed by her and addressed to the cashier: "Please let C. M., my nephew, have the amount of the within bill." *Held,* that the receipt was in the nature of a certificate of deposit, and its delivery, so indorsed, to C. M. with the intention of giving to him the fund due from the bank operated as a valid gift of such fund.

83 . 31
98   549

83   31
99   48

83   31
102  443
102  645

83   31
108  568

83      31
110   ² 82
53 LRA  605

83      31
115    ²660

2. An action *ex contractu* to recover money paid by a bank to defendant and alleged to have been had and received by him to the use of plaintiff, is an election to ratify and affirm the payment, and precludes a subsequent action to recover the money from the bank on the ground that such payment was unauthorized.

APPEAL from the Circuit Court for *Sauk* County.

The appellant, in his capacity as administrator of the estate of Lucretia Austin, deceased, brought this suit against the respondent, alleging that prior to and at the time of her death there was deposited in the defendant bank, of the moneys of the said Lucretia Austin, and to her credit, the sum of $4,504.70, which sum it was alleged was due and owing to her, the said Lucretia Austin, from the defendant bank, at the time of her death, but the defendant still has and holds it, and on demand of plaintiff has refused to pay the same.

The answer alleges, in substance, as a first defense, that prior to the death of the said Lucretia Austin, and on the 28th of December, 1887, the defendant received from her four United States government bonds, with directions to sell them and place the proceeds to her credit; and also received therewith, at the same time, for collection, certain interest coupons of the value of $221, the proceeds of which were in like manner to be placed to her credit. That such proceeds of the bonds and coupons were $4,504.70, and were, immediately after the sale of said bonds and collection of said coupons, placed to her credit in the said bank; that they were receipted for by the cashier of said bank when it received them, as follows:

"IRONTON, Dec. 28, '87.

"Received of Lucretia Austin four 4½ registered bonds, No. 43,981, No. 43,986, No. 43,983, No. 43,982, to be sold and the proceeds placed to her credit in the 1st Nat'l Bank of Baraboo; also for collection, $221 in coupons.

"CHAS. L. SPROAT, Cashier."

Lucretia Austin died January 3, 1888, and afterwards on the 6th of February, 1888, the said receipt was presented at the defendant bank by Charles Mitchell, indorsed upon the back thereof as follows:

"IRONTON, Sauk Co., Wis.

" *Mr. Chas. L. Sproat, Baraboo, Wis.*— SIR: Please let Chas. Mitchell, my nephew, have the amount of the within bill, and oblige          LUCRETIA AUSTIN. .

"Witness:

"W. H. MITCHELL,

"CATHARINE DYSON."

Said indorsement was dated January 2, 1888. That the said Sproat, as cashier of the bank, upon the presentation of the receipt so indorsed, paid to the said Mitchell the amount aforesaid, namely, $4,504.70. The defendant alleged that by the delivery of the said receipt with the order of direction so made thereon, the said Lucretia Austin, on the 2d of January, 1888, "intended to give, and did give," the amount for which the said receipt was given, to wit, the sum of $4,504.70, to the said Charles Mitchell, or to the said Charles Mitchell and others, to wit, to said Charles Mitchell and his brothers and sisters.

The second defense was that the plaintiff, as such administrator of the estate of Lucretia Austin, after the payment of the said sum of money to Charles Mitchell, as aforesaid, upon the said receipt bearing the indorsement and order above mentioned, commenced an action in the circuit court for Sauk county against said Mitchell and others, and recovered judgment for the amount so paid by the defendant in this action to the said Charles Mitchell on the 6th day of February, 1888, to wit, $4,504.70, together with interest thereon; that said judgment was for the same demand and claim made in this action against the defendant. And it is averred that the plaintiff, by instituting the action against Mitchell and others, and prosecuting the same and recover-

ing judgment therein for money collected on said bonds and coupons, and paid by the defendant to the said Charles Mitchell, as aforesaid, on presentation of said receipt and indorsement, elected to hold, and did hold, the said Charles Mitchell and his codefendants liable thereon, and thereby waived the right to claim the same of the defendant.

The plaintiff demurred to the answer. The circuit court overruled the demurrer, and from the order thereon plaintiff appealed.

For the appellant there was a brief by *G. Stevens,* and oral argument by *J. H. McCrory.* They contended that the recovery of a barren judgment against Mitchell did not preclude a recovery against the bank. Dissenting opinion by RUGER, C. J., in *Fowler v. Bowery Sav. Bank,* 113 N. Y. 450; *Avery v. Swords,* 28 Ill. App. 202; *Connihan v. Thompson,* 111 Mass. 272; *Bowen v. Mandeville,* 29 Hun, 42; *Allaire v. Whitney,* 1 Hill, 484; *Drake v. Mitchell,* 3 East, 258; *Chipman v. Martin,* 13 Johns. 241; *Martin v. Davis,* 80 Wis. 376

*R. D. Evans,* for the respondent, argued, among other things, that a party may not assume successive positions in the course of a suit or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other or mutually contradictory. 2 Black, Judg. sec. 632; *Lilley v. Adams,* 108 Mass. 50; *Hanley v. Foley,* 18 B. Mon. 519; *Equitable Life Ins. Soc. v. May,* 82 Ga. 646. When remedies are not concurrent, and a choice between them is once made, the right to follow the other is forever gone. *Boots v. Ferguson,* 46 Hun, 131; *Riley v. Albany Sav. Bank,* 36 id. 522; *Bank of Beloit v. Beale,* 34 N. Y. 473; *Kennedy v. Thorp,* 51 id. 174; *Fields v. Bland,* 81 id. 239. When a party has the choice to affirm or disaffirm the act of a third party, and affirmance involves the assertion of rights inconsistent with disaffirmance, or *vice versa,* the choice having been once made and a remedy invoked, the election is conclusive and the party cannot thereafter assert a right or

invoke a remedy predicated on such affirmance or disaffirm-
ance. *Rawson v. Turner*, 4 Johns. 470; *Rodermund v.
Clark*, 46 N. Y. 354; *Riley v. Albany Sav. Bank*, 36 Hun,
513, 522, affirmed, 103 N. Y. 669; *Morris v. Rexford*, 18 ·
N. Y. 552; *Boots v. Ferguson*, 46 Hun, 129; *New York F.
Ins. Co. v. Lawrence*, 14 Johns. 46, 56; *Bank of Beloit v.
Beale*, 34 N. Y. 473; *Moller v. Tuska*, 87 id. 166, 169; *Nan-
son v. Jacob*, 93 Mo. 331. See, especially, *Fowler v. Bow-
ery Sav. Bank*, 113 N. Y. 450, 10 Am. St. Rep. 479, and 4
L. R. A. 145; *Terry v. Munger*, 121 N. Y. 161, 8 L. R. A.
216. Ratification, besides being a branch of the law of
agency, is also a branch of the law of election and waiver.
Bishop, Contracts, sec. 844. One may so ratify, adopt, or
acquiesce in the act of a forger as to be bound by a for-
gery. *Rudd v. Matthews*, 79 Ky. 479; *Cohen v. Teller*, 93
Pa. St. 123. One may even ratify a theft so as to make
good the title to stolen property. *Sanford v. Fourth Nat.
Bank*, 39 N. Y. St. Rep. 457. · If one, without actually induc-
ing another to act in a particular way, assent to the thing
done and seek to derive a benefit from it, he cannot, in case
of disappointment, repudiate the validity of the act assented
to. Bigelow, Estoppel (3d ed.), 579; *Field v. Doyon*, 64
Wis. 560; *Beall v. Barclay*, 10 B. Mon. 261, 264.

PINNEY, J. 1. The receipt set out in evidence given by
the bank to Lucretia Austin for the four bonds and $221
in coupons, the former to be sold and the latter to be col-
lected, and the proceeds to be placed to her credit, was
more than a mere receipt. It was of a contractual char-
acter, defining the duty of the bank in the premises, and
was the sole evidence which Mrs. Austin had to establish
her right to the fund produced by the sale of the bonds
and collection of the coupons. The bank, upon such sale
and collection, became her debtor for the amount. The
receipt was in the nature of a certificate of deposit. Plainly,

the bank would not be expected to or be bound to pay over the money without the surrender of its obligation to Mrs. Austin. The receipt was, therefore, potentially the fund itself, without which, in the ordinary course of business, it could not be obtained; and equitably at least, if not legally, it possessed all the characteristics of a regular certificate of deposit. It represented the money, the proceeds of the bonds and coupons. The answer alleges, in substance, the delivery of this receipt with the indorsement thereon by Mrs. Austin to her nephew, Charles Mitchell, five days after its date, and one day before her death, and that she thereby "intended to give, and did give," the entire fund produced from the bonds and coupons — $4,504.70,— to the said Charles Mitchell, or to him and his brothers and sisters. Construed with reasonable liberality, the answer must be held to allege a gift of this fund due from the bank to Mrs. Austin, under the circumstances above stated, to the party named in the order, and evidence would doubtless be admissible under the answer to show a gift of the fund either *inter vivos* or *causa mortis*.

A gift *inter vivos* must be completed by a delivery of the subject of the gift. A *donatio causa mortis* must be completely executed, so far as delivery is concerned, in the lifetime of the donor, precisely as required in the case of gifts *inter vivos*. A *donatio causa mortis* is a gift absolute in form, made by the donor in anticipation of his speedy death, and intended to take effect and operate as a transfer of title only upon the happening of the donor's death. The gift must be absolute, with the exception of the conditions inherent in its nature, and a delivery of the article donated is a necessary element; but it may be revoked by the donor, and is completely revoked by his recovery from the sickness or escape from the danger in view of which it was made. And, if not so revoked, the gift may be taken by the administrator of the donor, if necessary for the pay-

ment of his debts. 3 Pom. Eq. Jur. § 1146; *Basket v. Hassell,* 107 U. S. 609, 610; *Henschel v. Maurer,* 69 Wis. 576.

The question presented by the first defense is whether the delivery of the receipt, indorsed as stated, to Charles Mitchell, with intent to give him the proceeds of bonds and coupons, could operate as a gift; for whether the gift was one *inter vivos* or was intended as a *donatio causa mortis* is not a material question, as it is abundantly shown by the authorities that, so far as the subjects which may be disposed of by gift and the question of delivery are concerned, the law is the same in either case. *Camp's Appeal,* 36 Conn. 92, 93; *Harris v. Clark,* 3 N. Y. 93, 113; *Grover v. Grover,* 24 Pick. 261, 264; *Basket v. Hassell,* 107 U. S. 614. The law favors free and comprehensive power of disposition by an owner of his property, and the rigor of the earlier cases has been materially relaxed, both as to the subjects of such gifts and as to what will serve as a delivery to make them effectual. This is well illustrated by the cases above cited, in which it is held that the thing given must be delivered, or it must be placed in the power of the donee by delivery to him of the means of obtaining possession. "As to the character of the thing given," says SHAW, C. J., in *Chase v. Redding,* 13 Gray, 418, 420, "the law has undergone some changes. Originally it was limited, with some exactness, to chattels, to some object of value deliverable by the hand; then extended to securities transferable solely by delivery, as bank notes, lottery tickets, notes payable to bearer or to order and indorsed in blank; subsequently it has been extended to bonds and other choses in action in writing represented by a certificate, when the entire equitable interest is assigned; and in the very latest cases on the subject in this commonwealth it has been held that a note not negotiable, or, if negotiable, not indorsed, but delivered, passes with a right to use the name of the administrator of the promisee to collect for the donee's own use." And in

*Parish v. Stone*, 14 Pick. 198, speaking of the extension of the doctrine to include choses in action delivered so as to operate only as a transfer by equitable assignment or a declaration of trust, SHAW, C. J., also says that " these cases all go on the assumption that a bond or other security is a valid, subsisting obligation for the payment of a sum of money, and the gift is in effect *a gift of the money by a gift and delivery of the instrument that shows its existence and affords the means of reducing it to possession.*"

It has since been repeatedly held " that a deposit in a savings bank may be the subject of a valid *donatio causa mortis*, as well as of a gift *inter vivos*, and that such a gift may be proved by the delivery of the bank book to the donee or a third person for him; that, as there can be no manual delivery of the credit which the donor has in the bank, the delivery of the book which represents the deposit, and is the only evidence in the possession of the donor of his contract with the bank, together with an order or assignment, operates as a complete transfer of the existing fund, and is all the delivery of which the subject is capable." *Pierce v. Boston Sav. Bank*, 129 Mass. 430, and cases cited; *Davis v. Ney*, 125 Mass. 590; *Hill v. Stevenson*, 63 Me. 367; *Camp's Appeal*, 36 Conn. 88. In *Ridden v. Thrall*, 125 N. Y. 572, 577, 578, it was held that the deposit book in a savings bank answers the same purpose as a certificate of deposit in other banks, and that any delivery which transfers to the donee either the legal or equitable title is sufficient to effectuate a gift; and a gift of the moneys due a depositor, by delivery of the deposit book, was upheld, notwithstanding a by-law of the bank, printed in the book, required an order or power of attorney when some person other than the depositor attempted to draw the money; and the donee in that case had no such power, but the court held that he had the same right to enforce payment that he would have had if he had been the donee

of any non-negotiable chose in action or a certificate of deposit or unindorsed note, and could establish his right to payment in such case by any proof showing that he was the absolute legal owner.

It is well settled that in order to constitute a valid assignment of a debt or other chose in action, in equity, no particular form of words is necessary. Any words which show an intention of transferring or appropriating the chose in action to the assignee for a valuable consideration are sufficient; nor is any written instrument required. Any order, writing, or act which makes an appropriation of the fund amounts to an equitable assignment, and an oral or written declaration may be as effectual· as the most formal instrument. An order for or payable out of a particular fund, not only as between the drawer and payee, but as regards the drawee, will so operate, though not accepted by him. 1 Am. & Eng. Ency. of Law, 835, and cases cited *ubi ut supra*. The same is true as to gifts of choses in action, if a delivery, or what in judgment of law amounts to such, takes place. In *Wilson v. Carpenter*, 17 Wis. 516, COLE, J., says: "Delivery is essential, both at law and in equity, to the validity of a parol gift of a chattel or chose in action; and it is the same whether it be a gift *inter vivos* or *causa mortis*. Without actual delivery the title does not pass;" and he quotes 2 Kent, Comm. 439, where the author says: "Delivery in this, as in every other, case must be according to the nature of the thing. It must be an actual delivery, so far as the subject is capable of delivery. It must be *secundum subjectam materiam*, and be the true and effectual way of obtaining the command and dominion of the subject. If the thing be not capable of actual delivery there must be some act equivalent to it. The donor must part not only with the possession, but with the dominion, of the property. If the thing given be a chose in action, the law requires an assignment or some equivalent instru-

Crook vs. The First National Bank of Baraboo.

ment, and the transfer must be actually executed." *Henschel v. Maurer*, 69 Wis. 576; *Brunn v. Schuett*, 59 Wis. 269.

In *Elam v. Keen*, 4 Leigh, 333, 26 Am. Dec. 322, an oral gift of a bond in suit, accompanied by a delivery of the attorney's receipt for it, was held a valid gift of the bond, CARR, J., saying: "The bond itself could not be delivered. It was in court, in the custody of the law. The receipt *was its representative.* . . . As in the case of the key, the delivery of the receipt ' was the true and effectual way of obtaining the use of the subject.' Speaking from my own experience, I should say an attorney requires no better order for the payment of money he has collected on a bond than the receipt he has given for the bond. When he takes this in, with a receipt upon it for the money, he feels himself safe." In this case, superadded to the receipt given by the bank for the bonds and coupons, was an order from the party depositing them for conversion, written upon the receipt itself. *Moore v. Darton*, 4 De Gex & S. 517, 520; *Walsh's Appeal*, 122 Pa. St. 177, 187–190. In *Stephenson v. King*, 81 Ky. 425, it is shown that the arbitrary rule requiring an assignment and delivery of the *identical thing* in order to make a gift of it valid has been abandoned; and the language of the court in *Elam v. Keen*, 4 Leigh, 333, that " there are many things of which actual manual tradition cannot be made, either from their nature or situation at the time. It is not the intention of the law to take from the owner the power of giving these. It merely requires that he shall do what, under the circumstances, will in reason be equivalent to an actual delivery," — was approved; and it was held that "there is no reason why the intention to give with the actual delivery of the written evidence of the right to the thing, although in the possession of another, under the belief of the donor that it perfects the gift, should not be held to constitute a valid gift *causa mortis.*"

But, as already noticed, there was here the written order of the donor on the cashier of the bank, indorsed on the receipt itself; and it is alleged in the answer that by the delivery to Mitchell of these instruments Mrs. Austin intended to give, and did give, the fund in question to Mitchell. The terms of the order, it is true, are ambiguous, and it is argued that it amounted only to an authority to Mitchell to receive the money as Mrs. Austin's agent. The averment of intention to give and actual gift answer this objection for the purposes of this demurrer, for we think that, as the language of the order is ambiguous, it is entirely clear that parol evidence of what occurred at the time is competent to show that the order and delivery of the receipt were intended by Mrs. Austin to operate as a present gift, and not as a mere authority to receive the money for her use, as that the delivery of the receipt and order was accompanied with words of present gift, or that other contemporaneous facts and circumstances justified that conclusion. We therefore hold that the delivery of the receipt, with the order indorsed, with the intention of giving the chose in action — the fund due from the bank — to Mitchell, constituted a valid gift to him of the money due from the bank to plaintiff's intestate.

2. We think that it is a fair inference from the allegations of the second defense that the action in which the plaintiff as administrator recovered judgment against Charles Mitchell and others in the circuit court for Sauk county, for the same money sued for by him in this action, was an action *ex contractu* for money had and received by them to his use, and the question is whether the plaintiff did not thereby affirm that the money was properly paid over by the defendant bank to them or to Charles Mitchell for his use, so as to preclude him from now asserting as a basis of recovery in this action that such payment was wrongful. The rule is universal that where a party has a choice be-

tween two inconsistent rights or remedies, and deliberately makes his choice, such election becomes conclusive upon him and precludes him from subsequently adopting the other. *Mariner v. M. & St. P. R. Co.* 26 Wis. 89; *Warren v. Landry*, 74 Wis. 144; *Curtis v. Williamson*, L. R. 10 Q. B. Cas. 57; *In re Davison*, L. R. 13 Q. B. Div. 54. If the alleged gift to Mitchell was void or inoperative for any reason, the bank still remained the debtor of Mrs. Austin, and the money it paid to Mitchell was its own money, and the plaintiff had no claim whatever to it. This money so paid could not become the money of the plaintiff except upon his ratification of the act of Mitchell in collecting and of the bank in paying it to him; so that the money he thus received from the bank became and was money received and held by him to and for the use of the plaintiff, and the plaintiff could have no claim to it but by electing to treat it, as he did by suing for and recovering it, as his money in the hands of the defendants in that action. He could not treat them as his debtors for the money had and received from the bank to his use, and recover against them on that ground, and thereafter sue and recover the same sum from the bank as being still indebted to him. He could not sue and recover in both actions at the same time, nor in succession. His rights and remedies *ex contractu* against Mitchell and others and against the bank were alternative, and not concurrent; and it must follow necessarily that the recovery against Mitchell and others, although not collectible, necessarily extinguished his cause of action in *indebitatus assumpsit* (for it is in that form) against the bank. Numerous authorities were cited by the respondent's counsel sustaining this view of the case, among which is the case of *Fowler v. Bowery Sav. Bank*, 113 N. Y. 450, which was a case where a person entitled to a savings-bank deposit, which had been paid without authority to another person, had a right of action therefor against the

bank as debtor, and one against the party so receiving it for money had and received; and it was held that by bringing either action he lost the right to the other, and that a judgment against the party who wrongfully received the money from the bank, although uncollectible, was a bar to an action against the bank. This case seems to have been thoroughly discussed, and has been cited elsewhere with approbation, and was affirmed in *Terry v. Munger*, 121 N. Y. 161; and subsequently the same point was decided in a well-reasoned opinion in *Equitable L. Ass. Soc. v. May*, 82 Ga. 646. The case is the same in principle as where a party who has waived the tort by conversion of personal property by suing in *assumpsit* is held precluded from thereafter maintaining trover against the defendant's vendee of the same property. *Nield v. Burton*, 49 Mich. 53; *Farwell v. Myers*, 64 Mich. 234. The subject of election between inconsistent remedies and the effect of such election is quite fully considered in *Crossman v. Universal R. Co.* 127 N. Y. 34, 37–39, in which *Fowler v. Bowery Sav. Bank, supra,* is cited with approval. It would have been a singular application of legal principles, indeed, if the plaintiff had prosecuted both these actions in the same court at the same time, that would permit the plaintiff to recover against Mitchell and others on the ground that they had had and received this money from the bank to his use, and so to obtain judgment against them, and, the suit against the bank being called for trial, would allow him to recover the same money against the bank on the ground that it had not been paid to Mitchell to the plaintiff's use, but the bank still was indebted to the plaintiff for it. The remedies pursued by the plaintiff in the two actions are not concurrent, as in the case of several actions against joint trespassers and the like, where both actions proceed upon the same identical facts as a foundation of a recovery, and in which the right involved

in either case is entirely consistent with that in the other. It will be found, upon close examination, that in no case can remedies be regarded as consistent unless predicated upon consistent allegations or grounds of recovery. Here, as already stated, the ground of recovery in the suit against Mitchell and others was that they had received the money from the bank due to the plaintiff to his use, and this is inconsistent with the allegation in this case that the bank still remained indebted to him therefor. The positions are mutually contradictory. · The defendant bank may have materially changed its position upon the faith of the assertion and election of the plaintiff in the former action, so that it would be unjust to allow the plaintiff now to retract the claim that Mitchell and others had received the money from the bank to his use, and now insist in this action, as a basis of recovery, that the former allegation is untrue and the bank still remains indebted to him for the money. Both allegations cannot be true. *Warren v. Landry*, 74 Wis. 144; *Morris v. Rexford*, 18 N. Y. 552; *Rodermund v. Clark*, 46 N. Y. 354; *Moller v. Tuska*, 87 N. Y. 166, 169.

We think the remedies pursued by the plaintiff are inconsistent; that, by electing to pursue and charge Mitchell and others for money had and received from the bank, the plaintiff elected to affirm the payment made by the bank to Mitchell, and that he cannot now be heard to say that the payment was without authority and that the bank is still indebted to him, as administrator, for the money. The order of the circuit court, overruling the plaintiff's demurrer to the defendant's answer, must therefore be affirmed.

*By the Court.*— The order appealed from is affirmed.