SCHULTZ, Administrator, Respondent, vs. BECKER, Appellant.

*December 8, 1906—April 9, 1907.*

*Gifts* mortis causa: *Administrator: Conversion of personal property.*

1. To be valid, a gift *mortis causa* must take effect during the life of the donor as an executed and complete transfer of the possession and title, either legal or equitable, to the donee.
2. In an action by an administrator for a wrongful conversion of household goods of his decedent, it is *held* upon the evidence that it was a question for the jury whether defendant had refused to allow plaintiff to take possession of the property.

APPEAL from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

It appears from the record that Mary Becker died intes-

tate June 18, 1905. On September 27, 1905, the plaintiff was duly appointed administrator of her estate. After a demand upon the defendant by the plaintiff for the property herein-after mentioned, and refusal, as alleged, of the defendant to deliver the same, on January 18, 1906, the plaintiff commenced this action against the defendant to recover the value of certain household furniture—clothing and bedding described—the property of the said Mary Becker at the time of her death and alleged to be of the value of $300, and also to recover the value of six certificates of deposit described, the property of the said Mary Becker at the time of her death, of the alleged aggregate value of $1,200. The defendant answered by way of admissions to the effect that June 18, 1905, Mary Becker was and for some time prior thereto had been in the possession and the owner of the personal property mentioned of the value of $1,200; that she died intestate on the day named; that the plaintiff is the administrator of her estate, and that he had qualified as required by law; and that the plaintiff had made demand of some personal property supposed to be the same property referred to in the complaint, but, save as thus expressly admitted, the answer denies each and every allegation of the complaint.

It appears in the record, among other things, in effect, that the deceased, Mary Becker, was seventy-nine years of age at the time of her death. She was the widow of Fred Becker, who died in 1892. She had been his wife for thirty-four years before he died. Fred had been married before and had two sons by his first wife, and the defendant was one of them. About ten years after Fred married Mary Becker the defendant married and left home. In 1882, at the request of his father, the defendant with his family went back and took charge of his father's farm and cared for him and his stepmother until his father died, and from that time on until Mary died she continued to live as before in her own separate part of the same farmhouse occupied by the defendant. Mary's husband had made provision for her comfortable sup-

port, whereby she was not only to have such separate home and half an acre for a garden, but the defendant and his brother were each to pay her $100 a year in cash and furnish her with a certain quantity of wood and provisions each year. Mary owned everything in her part of the house and ran the same and the garden herself and attended to her own business, except such assistance as she got from her sister and a Mr. Wolf. Mary had no blood relatives except a sister and her two daughters, Lena and Lizzie Schultz, who lived about half a mile from where Mary did.

On Saturday, June 17, 1905, Mary was very sick and was visited by the doctor on the afternoon of that day. Her niece, Lena Schultz, and the defendant's wife sat up with her all that Saturday night. Between 7 and 8 o'clock the next morning the doctor again attended her. About that time the defendant sent his boy for one A. L., who lived about a mile distant. A. L. came between 8 and 9 o'clock and asked the defendant in the presence of Lena Schultz and his wife and another lady what he wanted of him. The defendant replied, some kind of a writing disposing of Mary's property, and that he, A. L., knew best what to write. A. L. then said there was nothing he could do except to make a will—write Mary's wishes on paper. The defendant then said Mary did not want any will, but wanted a memorandum, which A. L. told him would be worthless and advised against it. A. L. could not understand Mary, who was German, but communicated with her through the defendant's wife, which finally resulted in his making the following written memoranda:

Exhibit 1, covering a large number of items in the house to various persons.

Exhibit 2:

"I, Maria Becker, of the town of Greenville, county of Outagamie, state of Wisconsin, do make it known that by and with my order I give to *Henry Becker, Sr.*, all monies now deposited in the First National Bank of Appleton, amounting to twelve hundred ($1,200) dollars, providing my death oc-

·curs at this time, and I further order that the sum of three hundred ($300) dollars shall be taken from the above amount of twelve hundred ($1,200) dollars and be used if necessary to pay the cost of the funeral and monumental expenses. It has been my expressed wish and do express it now that no will or testament be written or made. In conveying my personal property to the said *Henry Becker, Sr.,* I do declare and order that the above written order shall be in full force immediately after my death. In witness whereof I have set my hand and seal this 18th day of June, 1905.

her<br>
"MARIA ✕ BECKER.     [Seal.]<br>
mark.

"A. Lockschmidt, Witness.
"Lydia Schottler, Witness."

Exhibit 3:

·"$1200.                              June 17th, 1905.
"One year after date I promise to pay to the order of Mary Becker Twelve Hundred Dollars at the First National of Appleton.

"Value received with interest at $2\frac{1}{2}$ per cent. per annum.
"This note is of no value after the death of Mary Becker.

his<br>
"HENRY ✕ BECKER."<br>
mark. ·

her<br>
·"ERNESTINE ✕ BECKER."<br>
mark.

Soon after, and about 1 o'clock in the afternoon of that same Sunday, June 18, 1905, Mary died.

At the close of the testimony the plaintiff's counsel moved the court for the direction of a verdict in favor of the plaintiff, and, the court having stated that such "motion to direct a verdict must be granted," counsel for the defendant thereupon stated "that the defendant disclaims, and has always disclaimed, any right, title, or interest in the household goods, and makes his claim solely as to the certificates of deposit amounting to $1,200, and for which the note, Exhibit 3, was given, and the defendant asks of the court that the questions as to the transfer and delivery of the certificates of deposit

and all other questions involved in that transaction be sub-
mitted to the jury." To that request the court stated:

"As to that point the court holds that the undisputed evi-
dence shows that all the property involved in this action passed
into the possession of the defendant and has remained in his
possession down to the present time."

The defendant duly excepted to such ruling of the court.
The court then stated that "under the decision of the court
the gift *causa mortis* fails as to all of that property. The
uncontradicted evidence shows that the property is, and has
been ever since the death of the donor, in the possession of the
defendant, and he must account for it. So far as the evidence
shows, nobody has made any claim to it except the adminis-
trator; there is no disclaimer here in the pleadings or any-
where else that I know of except the mere verbal disclaimer
on the trial." Counsel for the defendant excepted to such
ruling of the court as contrary to the evidence and that it was
a question for the jury and not for the court. The defendant
then asked the privilege of showing that the household goods
did not exceed in value $100, to which the plaintiff objected
on the ground that the plaintiff's witnesses were not present;
"and thereupon the court directed the jury to find and return
a verdict in favor of the plaintiff and against the defendant
in the sum of $1,500 damages, and the jury accordingly
found, rendered, and returned into court such verdict as so
directed." From the judgment entered upon that verdict in
favor of the plaintiff and against the defendant for the
amount stated with costs, the defendant appeals.

For the appellant there was a brief by *Pierce & Lehr,* and
oral argument by *J. E. Lehr.*

For the respondent the cause was submitted on the brief of
*Thomas H. Ryan* and *Albert H. Krugmeier.*

The following opinion was filed January 8, 1907:

CASSODAY, C. J. 1. There is no claim nor pretense that
the written memoranda set forth in the foregoing statement

constituted a last will and testament of the deceased. On the contrary, the answer expressly "admits that said Mary Becker died intestate." The memorandum itself, Exhibit No. 2, declares it to be the "expressed wish," therein repeated, "that no will or testament be written or made." No attempt was made to prove it as a will. The claim is that there was a complete transfer and delivery of the certificates of deposit in the lifetime of the deceased. Assuming that the memorandum relied upon truly expressed the wish of the deceased, yet it was a mere order to give to the defendant all moneys then on deposit in the bank, providing her death occurred at that time, and even then it was therein ordered that a certain amount thereof should be used as therein stated, and then declared that, in conveying her personal property to defendant, she thereby ordered "that the above written order *shall be in full force immediately after my death.*" In other words, the proposed gift was purely testamentary, and only to take effect after her death and not *in præsenti.* The case which seems to be nearest the case at bar in its facts is *Basket v. Hassell,* 107 U. S. 602, 609, 610, 2 Sup. Ct. 415, where Mr. Justice MATTHEWS carefully reviewed and analyzed the adjudications, English and American, and reached the conclusion, and the court held, that

"A *donatio mortis causa* must, during the life of the donor, take effect as an executed and complete transfer of his possession of the thing and his title thereto, although the right of the donee is subject to be divested by the actual revocation of the donor, or by his surviving the apprehended peril, or by his outliving the donee, or by the insufficiency of his estate to pay his debts. If by the terms and condition of the gift it is to take effect *only* upon the death of the donor, it is not such a *donatio,* but is available, if at all, as a testamentary disposition."

That was an attempted gift of a certificate of deposit whereby the payee, during his last sickness and in the apprehension of death, made and signed the "following indorse-

ment" upon such certificate: "Pay to Martin Basket, of Henderson, Ky.; no one else; then not till my death. My life seems to be uncertain. I may live through this spell. Then I will attend to it myself;" and then delivered it to the proposed donee and died. It was held that "by such indorsement and delivery" the donee "acquired no title to, or interest in, the fund." In the opinion of the learned justice it is said "that a *donatio mortis causa* must be completely executed *precisely as required* in the case of gifts *inter vivos,* subject to be divested by the happening of any of the conditions subsequent" above mentioned. "These conditions are the only qualifications that distinguish gifts *mortis causa* and *inter vivos.* On the other hand, if the gift does not take effect as an executed and complete transfer to the donee of *possession and title, either legal or equitable, during the life of the donor, it is a testamentary disposition, good only if made and proved as a will."* That adjudication has repeatedly been referred to approvingly by this court. *Barker v. Buhre,* 61 Wis. 487, 489, 21 N. W. 613; *Henschel v. Maurer,* 69 Wis. 576, 34 N. W. 926; *Crook v. First Nat. Bank,* 83 Wis. 31, 36, 37, 52 N. W. 1131; *Opitz v. Karel,* 118 Wis. 527, 530, 531, 95 N. W. 948. As indicated in the case at bar, the order written in the memorandum was only to be in force after the death of Mrs. Becker and not *in præsenti.* Pursuant to that theory the scrivener wrote the indorsement and put the mark on one of the certificates the day after Mrs. Becker died. That certificate was absent at the time he wrote the indorsement on the other certificates. Manifestly the ruling of the trial court to the effect that the document which governed in the case showed that the transaction was not a valid gift *causa mortis* was correct. For similar reasons there was no gift *inter vivos,* much less a purchase of any of the property in controversy by the defendant. The conversion of the certificates of deposit and the refusal to deliver the same to the plaintiff or his attorney seems to be conceded.

2. As to the other personal property, the plaintiff testified to the effect that when the demand was made for the same by him the defendant said it was there in the house, but that Mrs. Becker had given it all away. The defendant testified to the effect that when the plaintiff demanded the household goods he told him they were not given to him and he was not holding them, and that if he wanted them he should take them; that he, the defendant, never made any claim to such household goods, and that he never refused to let the plaintiff, or anybody else, have those goods.

At the close of the testimony, and after the court had intimated an opinion against the defendant, his counsel disclaimed and asserted that he had always disclaimed any right, title, or interest in the household goods. The court held, however, that such goods passed into the possession of the defendant and remained there down to the time of the trial and that he must account for them. The defendant excepted to such ruling and claimed that the question was for the jury and not for the court. The court directed a verdict in favor of the plaintiff and against the defendant for $1,500, which included $300 as the value of such household goods. We perceive no ground upon which such ruling can be sustained. The goods apparently remained in the same portion of the house which had been occupied by Mrs. Becker. The defendant was under no obligation to remove them to the plaintiff's premises. Under the evidence referred to, it was at least a question for the jury as to whether the defendant refused to allow the plaintiff to take away such household goods, and, if so, their value. By reason of such error the judgment cannot be affirmed.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

TIMLIN, J., took no part.

A motion for a rehearing was denied April 9, 1907.