GILES H. G. FOWLER, as Executor, etc., Respondent, v. THE BOWERY SAVINGS BANK, Appellant.

J. deposited a sum of money with defendant in trust for E., his wife, plaintiff's testatrix. A pass-book was delivered to him. After the death of both husband and wife and the issuing of letters testamentary to plaintiff, he called with them at defendant's bank and demanded payment of the deposit; he was told by one of its officers that it would be paid to him when he came with the pass-book which was then in possession of the executor of J.; thereafter the latter presented the pass-book, together with proof of his appointment, and thereupon defendant paid the deposit to him on surrender of the pass-book. In an action to recover the sum deposited it appeared that plaintiff, after learning of the payment, brought suit against J.'s executor to recover the money so paid and recovered judgment therein, and being unable to collect the same, brought this action. *Held* (RUGER, Ch. J., dissenting), that plaintiff had an election of remedies, *i. e.*, either an action against defendant to recover the deposit, or an action against J.'s executor for money had and received; but he was not entitled to both, and by electing the latter remedy he lost the former, as by so doing he adopted and ratified the action of defendant in making the payment, and this would be a good defense in an action by defendant against J.'s executor to recover back the money paid to him.

*It seems* that if the money had been left on special deposit, plaintiff could have pursued it in the hands of said executor without losing his remedy against defendant.

Where a trustee is bound to pay money to a beneficiary as a debt, if he makes payment to another person, this is not a payment of the debt and the moneys paid are not the property of the beneficiary.

In such case the beneficiary may ignore the payment and sue the trustee as his debtor, or he may ratify and adopt the payment and sue the person who received the money, but he cannot do both, and his election, once effectually made, is conclusive upon him.

The defense that the payment by the bank had been adopted and ratified by plaintiff was not set up in the answer. This objection was not raised upon the trial, and all the facts pertaining to such defense were proved without objection and were found by the court. *Held*, that the objection was not available here.

*Fowler* v. *Bowery Svgs. Bk.* (47 Hun, 399) reversed.

(Argued March 13, 1889; decided April 23, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 13, 1888, which affirmed a judgment in

favor of plaintiff, entered upon a decision of the court on trial without a jury.

The nature of the action and the material facts are stated in the opinion.

*Carlisle Norwood, Jr.*, for appellant. The relation between a bank and its depositor is simply that of debtor and creditor. (*People* v. *M. & T. Sav. Inst.*, 92 N. Y. 7; Laws 1834, chap. 229, § 6 ; Laws 1875, chap. 371, § 23 : Laws 1882, chap. 409, § 257.) Mrs. White or her executor was not entitled to payment from the bank, but the bank was right in paying to the executor of its depositor. (*Martin* v. *Funk*, 75 N. Y. 134, 142; *Willis* v. *Smythe*, 91 id. 297 ; *Mabie* v. *Bailey*, 95 id. 209, 211; *Boone* v. *Citizens' Sav. Bk.*, 84 id. 83.) Upon the death of John White his title as trustee devolved upon his executor, and as such executor he became, at law, immediately chargeable with all personal property held in trust by his testator, not merely as executor for the purposes of administration, but as successor in law to the deceased as a trustee, and it became his duty to take immediate possession of and to hold such fund, not as assets, but subject to the same trust as his testator and predecessor in the trust had held it. (*Wetmore* v. *Hegeman*, 88 N. Y. 69, 72; *Boone* v. *Citizens' Sav. Bk.*, 84 id. 83 ; *Banks* v. *Exrs. of Wilkes*, 3 Sand. Ch. 108 ; *Bunn* v. *Vaughlin*, 1 Abb. Ct. App. Cas. 253 ; *Emerson* v. *Bleakley*, 2 id. 22, 27 ; *Trecothick* v. *Austin*, 4 Mason, 16, 29 ; *Dias* v. *Brunnell's Exrs.*, 24 Wend. 8, 13; *Moses* v. *Murgatroyd*, 1 Johns. Ch. 119.) Where a party has a choice to affirm or to disaffirm the act of a third party, and affirmance involves an assertion of rights inconsistent with disaffirmance, or *vice versa*, the choice having been once made and a remedy invoked, the election is conclusive, and the party cannot thereafter assert a right or invoke a remedy predicated upon such affirmance or disaffirmance. (*Rawson* v. *Turner*, 4 Johns. 470, 474; *Rodermund* v. *Clarke*, 46 N. Y. 354; *Scarf* v. *Jardine*, 7 App. Cas. 345 ; *Riley* v. *Albany Sav. Bk.*, 36 Hun, 513, 522 ; 103 N. Y. 669 ; *Morris*

v. *Rexford,* 18 id. 532; *Boots* v. *Ferguson,* 46 Hun, 129; *Fireman's Ins. Co.* v. *Lawrence,* 15 Johns. 46, 56; *Bk. of Beloit* v. *Beall,* 34 N. Y. 473; *Bowen* v. *Mandeville,* 95 id. 237, 239; *Molla* v. *Tusca,* 87 id. 166, 169.)

*Eugene Burlingame* for respondent. The deposit made by John White for his wife, Elizabeth White, made him a trustee for her, and transferred any title he may have had to the funds from him personally to him as trustee, and passed the title to said deposit to Elizabeth White, and the plaintiff, as her representative, was entitled to the possession of the fund. (*Martin* v. *Funk,* 75 N. Y. 134; *Willis* v. *Smith,* 91 id. 297; *Martin* v. *Bailey* 95 id. 209; 13 Week. Dig. 493; *Mulcahey* v. *Em. Ind. Sav. Bk.,* 89 N. Y. 435.) The plain duty of the bank in this case was to pay the plaintiff. (69 N. Y. 314; 62 id. 12; 9 Week. Dig. 73; 40 Conn. 512.) At the time of the death of Elizabeth White she was the legal owner of the moneys so deposited as aforesaid in the defendant's bank. (*Martin* v. *Funk,* 75 N. Y. 134; 31 Am. Rep. 446.) The trust once established, and no power of revocation having been reserved, it was irrevocable. (*Minn* v. *Rogers,* 40 Conn. 512; 16 Am. Rep. 69; *Martin* v. *Funk,* 75 N. Y. 134; 95 id. 211.)

EARL, J. On the 15th day of November, 1871, John White, the husband of Elizabeth White, deposited with the defendant, in trust for his wife, the sum of $805.93, and the deposit was entered upon a pass-book, which was delivered to him, in this way: "Bowery Savings Bank in account with John White for Elizabeth White." This deposit remained in the bank during the lifetime of John White, who died November 13, 1882, leaving a will wherein he appointed John D. Flynn his executor. The will was admitted to probate and letters testamentary were granted to Flynn on the 23d day of January, 1883. Elizabeth White died December 18, 1882, leaving a last will and testament in which the plaintiff was named as executor, which will was admitted to probate and letters testamentary were issued to the plaintiff on the 11th day of January,

1883. On the twenty-fifth day of January, the plaintiff, with his letters testamentary, called at the savings bank and notified it of his appointment as executor, and demanded payment of the deposit. He was told by one of its officers that the money would be paid to him when he came with the pass-book, which was then in the possession of Flynn, the executor of John White. Thereafter, on the twenty-ninth day of January, Flynn having in his possession the pass-book, presented the same to the defendant, together with proof that he had been appointed executor of John White and demanded payment of the deposit; and the defendant thereupon paid the same to him, and the pass-book was surrendered to it. Thereafter, on the same day, the plaintiff called on the defendant again in reference to the deposit and was informed that it had been paid to Flynn. This action was commenced in June, 1886, to recover the sum deposited with the defendant and interest thereon.

It is clear that the plaintiff was legally entitled to receive payment of the deposit from the defendant, and that after the notice and demand by him it had no right whatever to pay the same to Flynn; and, but for facts yet to be stated, the cases of *Martin* v. *Funk* (75 N. Y. 134); *Willis* v. *Smyth* (91 id. 297); *Mabie* v. *Bailey* (95 id. 209), would be ample authority for the maintenance of this action. After payment by the defendant to Flynn, the plaintiff, in the fall of 1883, commenced an action against him to recover, among other things, the money thus paid. Issue was joined and the action was tried in the fall of 1884, and a verdict was rendered in favor of the plaintiff and a judgment was thereon entered. The plaintiff was unable, however, to collect anything on the judgment, and he thereafter commenced this action.

The relation between a savings bank and a depositor therein is that of debtor and creditor, and the defendant, therefore, became a debtor for the sum deposited with it by John White. (*People* v. *Mechanics and Traders' Savgs. Institution*, 92 N. Y. 7.) After his demand of the deposit, and the payment of the money to Flynn, there were two remedies open to the plaintiff: He could sue the defendant as a debtor for the

deposit and recover the amount thereof from it, or he could bring an action for money had and received to and for his use against Flynn, and recover it from him. But he was not entitled to both remedies at the same time, or in succession; and by electing the one he would lose the other. By electing to sue the bank he would repudiate its payment to Flynn, and his claim would be that the debt had not, in fact, been paid. By suing Flynn he would adopt and ratify the act of the bank in making payment to him, and his claim would be that the money due to him had, in fact, been paid to Flynn, and that Flynn had received it to and for his use. Such adoption and ratification of the payment would legalize the payment as between him and the bank, and thus discharge the bank. He could not occupy the position at the same time of claiming that the bank had paid his money to Flynn and yet that the bank was still his debtor. His election in this case to sue Flynn, and thus to treat him as his debtor, was not harmless to the bank, but in law may be presumed to have injured the bank, unless it should now be held to be discharged by its payment to Flynn. After the plaintiff commenced his action against Flynn, and thus ratified and adopted the payment by the bank to him, the bank could not, during the pendency of that action, have sued Flynn to recover back the money on the ground that it had been paid by mistake and received by him without authority, because it would have been a defense to such an action that the real owner of the fund had adopted and ratified the payment. But even if the mere commencement and pendency of the action by the plaintiff against Flynn would not have furnished such a defense, it is beyond doubt that if the bank should now bring an action against Flynn to recover back the money, he could successfully defend on the ground that the plaintiff had ratified and adopted the payment, and thus discharged the bank by the recovery of a judgment against him for the money paid as the real owner thereof.

· The two remedies, one against Flynn and the other against the bank, are not concurrent. If the two actions could not be prosecuted at the same time, they could not in succession.

Nothing could be more inconsistent than an action against Flynn, on the ground that money due to the plaintiff had been paid to him, and an action against the bank, on the ground that it had not paid the deposit and still remained debtor therefor. If the money had been absolutely the money of the plaintiff, left on special deposit with the bank, then he could have pursued the money wherever he could trace it without losing his remedy against the bank. In such a case the plaintiff would not be barred of his right of recovery against the bank until he had either recovered his money or the value of the same. All his remedies would be consistent, being based upon the theory of a wrongful disposition of his property. So, too, where a trustee, in breach of his trust, disposes of the trust property, the beneficiary of the trust may pursue it or its proceeds wherever he can trace them, so far as the law will permit him to do so, without relieving the trustee. All his remedies in such a case are consistent and based upon the same theory, to wit, a breach of trust. But if a trustee is bound to pay money to a beneficiary as a debt due from him to the beneficiary, then if he makes payment to another person, he has not paid the debt and the money paid is not, in fact, the property of the beneficiary. In such case the beneficiary may ignore the payment and sue the trustee as his debtor, or he may ratify and adopt the payment and sue the person receiving the money as his debtor, but he cannot do both. There is in such case a breach of trust, or not, as he may elect, and his election, once effectually made, is conclusive forever. (Comyns' Digest, Election, C. 2.) If one wrongfully takes and sells personal property not belonging to him, the owner has the election to sue him for the proceeds as money had and received to and for his use, and thus ratify the sale, or he may pursue the property and recover it or its value. But he cannot do both, and is bound by his election. (Pomeroy on Remedies, § 567 *et seq.*)

A few authorities may be cited to enforce these views. In *Priestly* v. *Fernie* (3 Hurls. & Colt. 977), it was held that where the master of a ship signs a bill of lading

in his own name, and is sued upon it and judgment is obtained against him, an action will not lie against the owner of the ship upon the same bill of lading, although satisfaction has not been obtained on the judgment against the master. Baron BRAMWELL, writing the opinion, said: "If this were an ordinary case of principal and agent, where the agent, having made a contract in his own name, has been sued on it to judgment, there can be no doubt that no second action would be maintainable against the principal. The very expression that where a contract is so made the contractee has an election to sue the agent or principal supposes he can only sue one of them, that is to say, sue to judgment."

In *Scarf* v. *Jardine* (7 App. Cas., L. R., 345) the facts were these: A firm of two partners dissolved, one retired and the other carried on the business with a new partner under the same style. A customer of the old firm sold and delivered goods to the new firm after the change, but without notice of it. After receiving notice he sued the new firm for the price of the goods, and upon their bankruptcy proved against their estate, and afterwards brought an action for the price against the late partner, and it was held that the liability of the late partner was a liability by estoppel only, and not jointly with the members of the new firm; that the customer might, at his option, have sued the late partner or the members of the new firm, but could not sue all three together; and that having elected to sue the new firm he could not afterwards sue the late partner. In that case Lord BLACKBURN said that the cases "are uniform in this respect; that where a man has an option to choose one or the other of two inconsistent things, when once he has made his election it cannot be retracted, it is final and cannot be altered. When once there has been an election to do one of two things you cannot retract it and do the other thing; the election once made is finally made." Lord WATSON said: "The plaintiff had the undoubted right to select his debtor, to hold either the old firm or the new firm responsible to him for the fulfillment of the contract; but I know of no authority for the proposition

that the respondent could hold his contract to have been made with both firms, or that, having chosen to proceed against one of these firms for recovery of his debt, he could thereafter treat the other firm as his debtor."

In *Rawson* v. *Turner* (4 Johns. 469), it was held that if a new sheriff receives a prisoner from his predecessor, he is answerable for his escape, though a voluntary escape may have existed in the time of his predecessor; but the plaintiff has his election, either to consider the prisoner in execution, and so charge the new sheriff for the last escape, or as out of execution, and charge the old sheriff. If he has once made his election, and sued the old sheriff and recovered judgment against him, it is conclusive, and a bar to any action against the new sheriff.

In *Sanger* v. *Wood* (3 Johns. Ch. 416), Chancellor KENT said: " Any decisive act of the party, with knowledge of his rights and of the fact, determines his election in the case of conflicting and inconsistent remedies." In *Morris* v. *Rexford* (18 N. Y. 552), there was a bargain and sale of goods for cash, and the vendee took possession, but failing to make payment, the vendor obtained a redelivery of his goods by writ of replevin; and it was held that this was a disaffirmance of the sale and evidence in bar of a subsequent action for the purchase-money, and that the vendor having elected the one remedy, his right to pursue the other was extinguished. COMSTOCK, J., writing the opinion, said: " A vendor of goods on a sale and delivery upon cash terms, if he fails to get payment, may consider the delivery absolute and rely on the responsibility of the vendee, or he may disaffirm and reclaim his property. But he cannot do both of these things. The remedies are not concurrent, and the choice between them once being made, the right to follow the other is forever gone. The law tolerates no such absurdity as a seizure of goods by a person claiming that he has never sold them, and an action by the same person, founded on the sale and delivery of the same goods, for the recovery of the price.

In peculiar circumstances a party may take either one of these courses, but having rightfully made his choice, the right to follow the other is extinct and gone." So here, the law will not tolerate the absurdity of holding that the plaintiff could sue Flynn on the ground that he had received money from the bank belonging to him, and at the same time sue the bank on the ground that it still remained his debtor, and that the money paid to Flynn was not his money and did not operate as payment.

In *Gardner* v. *Ogden* (22 N. Y. 327) it was held that the clerk of a broker, employed to sell land, having access to the correspondence between his principal and the vendor, stands in such a relation of confidence to the latter that, if he becomes the purchaser, he is chargeable as trustee for the vendor, and must reconvey or account for the value of the land; and the vendor having brought suit against both the broker and his clerk, making a claim against the broker for having fraudulently sold the land, and against the clerk for a reconveyance or accounting, the court said: "In the present case the plaintiff has elected to regard the purchaser as his trustee, and his complaint, as to him, proceeds on this basis. The plaintiff, therefore, elects to affirm the sale made to Smith. He cannot, *uno flatu*, affirm it as to him, and disaffirm it as to Ogden. * * * The affirmance of the sale by the plaintiff is a complete answer to the claim for damages against the firm for fraud in making the sale." In the *Bank of Beloit* v. *Beal* (34 N. Y. 473), it was held that, when a vendor, who has been defrauded in the sale of his goods, proceeds to judgment against the vendee upon the contract of sale, after he is apprised of the fraud, his election is determined, and he cannot afterwards follow the goods or the proceeds thereof into the hands of a third person on the ground of fraud; that if a principal, with a full knowledge of a fraud perpetrated by his agent, in the disposition of property purchased with his funds, prosecute the agent to judgment for the money so misappropriated, he thereby elects to treat the goods as the property of the agent, and cannot afterwards claim their proceeds in the hands of a third party.

In *Rodermund* v *Clark* (46 N. Y. 354), W. and defendant were joint owners of a sloop. Defendant, ignoring W.'s rights, sold the whole vessel to M. W., after the sale, took and retained possession. M. thereupon libeled the vessel as owner in the United States District Court. She was seized by the marshal, and M. having obtained judgment by default, she was delivered to him. W. assigned his interest, and also his claim against defendant, to the plaintiff, who sued for conversion; and it was held that W., having elected to assert his rights by retaining possession and refusing to recognize the sale, he and his assignee were precluded from maintaining an action for the conversion; that where a party has an election between inconsistent remedies he is confined to the remedy which he first chooses. FOLGER, J., writing the opinion said: "W. had two courses, either of which he might pursue. He could sue the defendant for the conversion, or he could assert his right of possession, by keeping a permanent possession, or regaining possession if it was interrupted. The effectually taking of either of these two courses precluded him from taking the other." In *Bowen* v. *Mandeville* (95 N. Y. 237), it was held that where a party had been induced by fraud to enter into an executed contract for the purchase of property, he may either rescind and recover back the consideration paid, or affirm the contract and recover damages for the fraud; he cannot have both remedies, as they are inconsistent. In *Cheeseman* v. *Sturges* (9 Bos. 246), S., one of the defendants, held real and personal property in trust, to be used for the joint benefit of himself and the plaintiff and a third person, in specified proportions as copartners in a joint enterprise, and under an agreement that he was to make advances for carrying out the enterprise, and that all stocks or other securities than cash which should be received should remain undivided until a final settlement, and that he would not dispose of the property (other than money) without the consent of the others. He accordingly made large advances, and subsequently sold and conveyed all the property without the consent of the plaintiff and received

therefor stock of an incorporated company; and it was held that the plaintiff by bringing an action, with full knowledge of these facts, in which he demanded a transfer of his share of the stock, and obtained an injunction against any disposal of it pending the action, must be deemed to have made his election of that remedy, and be treated as if he had consented to the sale.

In *Mattlage* v. *Poole* (5 Hun, 556) it was held, in substance, that where a vendor sells goods to the agent of an undisclosed principal, he may elect whether he will sue the agent for the price of the goods or the principal, but that he cannot have a recovery against both; and that where he has prosecuted the one to judgment he can have no recovery against the other. In *Riley* v. *The Albany Savings Bank* (36 Hun, 513), plaintiff's intestate, Mary Riley, had deposited with the defendant upwards of $800. The money was paid to Flannagan during the lifetime of Mary Riley, upon the production by him of the pass-book and Mary Riley's check. It was claimed that, at the time of signing the check, Mary Riley was of unsound mind and incapable of executing the same. After Riley was appointed administrator he presented a verified petition to the surrogate, under section 2706 of the Code of Civil Procedure, charging Flannagan with having corruptly procured an order from Mrs. Riley, knowing her to be insane, and having drawn the money from the bank, and further averring that he then had the same in his possession, and praying that he be compelled to surrender the same to the petitioner. Flannagan appeared on the return of a citation and admitted that he obtained the money from the bank and that the same was in his possession, and a decree was entered directing him to deliver the same to the administrator. For his failure to comply therewith, he was committed to the county jail, where he remained until discharged therefrom by the surrogate, because of his inability from sickness to bear longer the confinement; and it was held that the administrator, by claiming in his petition and procuring a decree of the Surrogate's Court adjudging that the money in Flannagan's hands belonged to

the estate of Mary Riley, ratified the act of Flannagan in drawing the money, and could no longer claim that the bank still owed to him the same money, or bring an action against it to recover the amount of the deposit; that the administrator had an election to treat Flannagan's act in drawing the money in two ways, viz., either to ratify or to disavow it; that having elected to ratify it, he could not thereafter disavow it. That case was appealed to this court and the order of the General Term reversing the judgment in favor of the plaintiff was here affirmed. (103 N. Y. 669.) The following authorities are to the same effect: *Curtis* v. *Williamson* (10 Q. B. [L. R.] 57); *Clark* v. *London, etc., Railroad Company* (7 Ex. [L. R.] 26); *Reymond* v. *Proprietors, etc.* (2 Metc. 319); *Lewis* v. *Carrier* (4 Allen, 339); *Cobb* v. *Knapp* (71 N. Y. 348); *Moller* v. *Tusca* (87 id. 166).

This extended examination of the authorities has seemed necessary on account of some difference of opinion upon the question considered which at first existed among the members of this court. It is seen that they justify the conclusion that plaintiff's election to sue and his recovery against Flynn furnished a defense of this action.

It is, however, objected, on the part of the plaintiff, that the defense that plaintiff had adopted and ratified the payment to Flynn is not set up in the answer; and such is the case. While the defendant alleges in its answer payment to Flynn, it does not allege that payment was made by the authority of the plaintiff or that he ratified or adopted it. But there was no such objection upon the trial. All the facts pertaining to that defense were proved without objection. There was no dispute about the facts, and they were found by the court. Hence the objection that the answer is defective is unavailing here.

We are, therefore, of opinion that the judgment should be reversed and a new trial ordered, costs to abide the event.

RUGER, Ch. J. (dissenting.) I am unable to concur in the opinion delivered in this case.

I am of the opinion that the prosecution of Flynn by the plaintiff's intestate was not a ratification of the payment by the bank to him. Flynn, in obtaining such payment, neither represented or assumed to represent Mrs. White, and the bank did not pay the money to Flynn as the agent or representative of Mrs. White, but dealt with him as a claimant of the money in his own right. Under such circumstances there could be no ratification. Ratification is a branch of the law of agency, and cannot be held to have occurred unless there is a principal, and an act assumed to have been done by some one in his name or on his behalf. (Story on Agency, § 251; *Farmers' Loan and Trust Co.* v. *Walworth*, 1 N. Y. 433.)

There were, consequently, no concurrent remedies and no occasion for an election by the plaintiff.

All concur with Earl, J., except Ruger, Ch. J., dissenting.

Judgment reversed.