## ACTION ON NOTES ENDORSED IN BLANK AND LEFT WITH ATTORNEY FOR COLLECTION, WHO USED THEM AS COLLATERAL.

Court of Appeals for Wood County.

CHARLES F. GOTTSCHALK ET AL v. CHARLES E. BROWN ET AL.

Decided, May 8, 1913.

*Inconsistent Remedies—Application of Doctrine of Election—Stipula-tion Signed by Attorney and Tacitly Assented to by those He Rep-resents—Judgment Against One Defendant Followed by Applica-tion for Judgment Against a Co-Defendant.*

1. Where two or more defendants in an action are represented by the same attorney, and he agrees to and signs a stipulation of settle-ment which is entered in the case, the defendants represented by him will be held to have had notice thereof, and one of them who tacitly assented thereto will not thereafter be released therefrom on the ground that he did not sign the stipulation individually.
2. The doctrine of election between inconsistent remedies does not apply to a plaintiff who, pursuant to such stipulation, takes judg-ment against one of the defendants and thereafter applies for judg-ment against the other defendant.

*Charles T. Lawton* and *N. R. Harrington,* for plaintiffs in error.

*Benj. F. James* and *G. C. Nearing,* contra.

CHITTENDEN, J.; KINKADE, J., and RICHARDS, J., concur.

Error to Common Pleas Court of Wood County.

The facts as shown by the record are substantially as follows: On the 14th day of August, 1908, Joseph Gottschalk sold his farm to the defendant, Charles E. Brown, for a consideration of $10,500. Six thousand dollars was paid in cash and the balance of the purchase price was evidenced by nine promissory notes of $500 each, secured by a mortgage upon the real estate sold. After the execution of these notes, Gottschalk deposited the notes, together with the mortgage, with Edward Beverstock, an attorney at law, who had prepared the papers. He endorsed the notes and the mortgage in blank and Beverstock, by a written

agreement, undertook their collection without cost or expense to Gottschalk. Thereafter, without any authority from Gottschalk Beverstock wrote over the signature of Gottschalk upon the mortgage an assignment of the same to himself, and also without authority endorsed upon the notes above Gottschalk's signature "without recourse on me."

On the 28th day of July, 1910, Joseph Gottschalk died and the plaintiffs in this action are executors of his will. Four of the above mentioned notes were paid in full during the lifetime of Mr. Gottschalk and the proceeds were duly accounted for. Prior to the death of Mr. Gottschalk a payment of $300 was made to Beverstock by the defendant Brown to be applied upon the note maturing in September of that year. This three hundred dollar payment at the time of the commencement of this suit had not been accounted for by Beverstock.

After the death of Mr. Gottschalk the executors served a written notice upon the defendant, Charles E. Brown, advising him that they were executors of the estate of Joseph Gottschalk and that any money due the estate should be paid to them, as such executors, and further notifying him that no one else had authority to receive any money or property due the estate. Thereafter, in September of that year the defendant Brown paid to Beverstock the balance due upon the note maturing in September, amounting to about $205, and also paid to him the note maturing the following March amounting at that time with interest to $512.50.

After these notes had been deposited with Mr. Beverstock he pledged them to the First National Bank of Bowling Green as collateral security to an indebtedness of himself and wife to the bank. It is conceded that the bank was a *bona fide* holder of these notes to the extent of the indebtedness to which they were deposited as collateral security.

On the 16th day of December, 1910, the plaintiffs filed their petition in this cause to obtain judgment upon the unpaid notes and to foreclose the mortgage securing them. On the day following, to-wit, December 17th, 1910, the defendant, Charles E. Brown, with his attorney went to the bank for the purpose of

paying the notes and obtaining possession of them. It may be mentioned at this point that the defendant Brown had the right to pay those notes at any time by virtue of the provision to that effect contained in the mortgage.

Thereafter on the 26th day of February, 1912, a stipulation of settlement was entered into between the executors and Edward Beverstock, whereby he agreed to pay to them the sum of $2,500, which was to be paid in installments as set forth in the stipulation. The stipulation provided that if the installments were not paid in accordance with the stipulation, "that plaintiffs were to have judgment against said Edward Beverstock upon the first day of the next term of the common pleas court, to-wit, April 8th, 1912, for the full amount of the claim sued upon in said cause No. 16602, less such payments as he shall have made thereon under this stipulation, and plaintiff was to be further privileged to proceed with the trial and determination of the issues in said cause No. 16602 as to the defendant, Charles E. Brown, and defendants other than Edward Beverstock, for the recovery of whatever may be still owing on said judgment, and the decree of foreclosure as prayed for in said cause was to be continued on the docket for that purpose but without prejudice to the rights of said parties other than Edward Beverstock."

This stipulation of settlement was made in this cause and embraced another action pending in the Probate Court of Wood County. The stipulation was filed in this cause without objection or exception by any party, and all parties assented thereto by consenting to the halting of the proceedings, so that the terms of the stipulation might be carried out.

At the time of the execution of this stipulation the defendant, Edward Beverstock, paid to the plaintiffs $875. He made no further or other payment, and in accordance with the stipulation a judgment was thereafter entered against him in the sum of $1,953.73. The cause thereafter came on to be heard upon the issues between the plaintiff and the defendants Brown. A judgment was rendered in favor of the defendants, Charles E. Brown and Julia E. Brown, and this action is prosecuted to reverse that judgment.

The court made a separate finding of its conclusions of fact and law, and the defendants, Charles E. Brown and Julia E. Brown, present a bill of exceptions and contend that the evidence does not support the finding of fact, but does show that defendants are entitled to a judgment in their favor. The plaintiffs in error contend that upon the finding of fact as presented, the judgment should have been in their favor instead of in favor of the defendants, and ask for a final judgment in their favor here upon the findings of fact. The judgment below was planted upon the conclusion of law that in taking the judgment against Edward Beverstock as above mentioned, the plaintiffs elected to proceed on their remedy against the said Edward Beverstock, and thereby released and surrendered their right to further proceed to recover from the defendant, Charles E. Brown, and that by such election their right to recover judgment against the defendant Brown became extinguished. This question has been argued at length, and the court have made a careful investigation of the question and have reached the conclusion that there is no evidence of an election of inconsistent remedies shown by the record in this case, which precludes the plaintiffs from recovering a judgment against the defendants Brown. It is clear that there was no intention to make an election at the time of commencing the suit, as both Brown and Beverstock were joined as defendants in the original action. No objection to this joinder was made by the defendants Brown at any stage of the proceeding. We express no opinion whatever as to whether such objection, if made, would have been sustained, but we see no reason why the defendants Brown should raise the objection, as the joinder was manifestly to their advantage. By a proper pleading they might seek a judgment in this same proceeding against the defendant Beverstock, and thus avoid any further litigation growing out of the subject matter.

We see no reason why the taking of a judgment against the defendant Beverstock first should preclude the defendants from prosecuting their action to judgment against his co-defendant Brown for any amount remaining unsatisfied on the judgment obtained against Beverstock.

The terms of the stipulation clearly indicate that no election of inconsistent remedies was intended, as it is expressly provided that the entry of judgment should not operate to prevent the plaintiffs from proceeding with the trial against the defendants Brown.

It is claimed that these stipulations are not binding upon the defendant Brown because not signed by him. While it is true that the stipulation was not signed by him, it was entered in a case to which he was a party and was signed by his attorney, although he at the time was acting for the defendant Beverstock. Nevertheless the defendants Brown must be held thereby to have had notice of the execution of the stipulation and of its being filed in the case, and all that took place with respect thereto; and having this knowledge they have estopped themselves from a defense of want of knowledge of the stipulations and their affect by assenting to the staying of the proceedings in accordance with the terms thereof. Furthermore, the defendants Brown took the benefit of the payment of the $875 made by Beverstock as a result of this stipulation. It would be inequitable to permit the defendants Brown to accept the benefits of this stipulation and then assert the stipulation and the judgment obtained against Beverstock in pursuance of it as a bar to the further prosecution of the action against them.

The doctrine of election as asserted and held in this case by the court below applies only to inconsistent remedies. We are unable to find that the remedies sought against these defendants are inconsistent. The plaintiffs were entitled to a judgment against the defendants Brown because of their liability upon the mortgage indebtedness, and they were likewise entitled to a judgment against the defendant Beverstock because of money paid to him by the defendants Brown on such indebtedness for the benefit of the executors. We are of the opinion that the case relied upon by the trial court in determining this question, 113 N. Y., 450, found also in 21 N. E., 172, is not applicable to this case. Our views as above enunciated seem to be entirely supported by the later New York cases: *Russell* v. *McCall,* 141 N. Y., 437, also reported in 36 N. E., 498; and *In re Huffman,* 136 App. Div. (N. Y.), 515, 520. We also think that the case of *Maple* v. *Railroad,* 40 O. S., 313, is applicable to this case.

We find therefore that the defendants, Charles E. Brown and Julia E. Brown, should be charged with the five notes remaining unpaid at the time of the death of Joseph Gottschalk together with interest thereon. Upon that indebtedness they are entitled to the following credits: 1st. The payment of $300 made March 15th, 1910, to Edward Beverstock, which was before the death of Joseph Gottschalk. 2d. The amount paid to the First National Bank on December 17th, 1910, $1,419.73. 3d. $575 of the $875 paid by Beverstock to plaintiffs on February 26th, 1912, making a total credit of $2,294.73.

We have not computed the interest items, but interest will be computed in accordance with the dates in the notes and the payments as above stated and at the rate stipulated in the notes. It is claimed by the plaintiffs that the defendants Brown are not entitled to credit for the payment made to the bank on December 17th, 1910; that the notes were not yet due and that their payment at that time operated to the disadvantage and injury of the plaintiffs. It is conceded as above noted, that the bank was a *bona fide* holder of these notes as collateral security. The provision of the mortgage is that the defendants may pay $100 or any multiple thereof at any time. The effect of this provision is to enable the defendants to pay the entire obligation at any time they may desire. They therefore were entitled, without giving any reason therefor and regardless of its effect upon anyone, to pay to the rightful *bona fide* holder of the notes the amount of indebtedness for which they were held as collateral security, and to this extent they are entitled to credit in the accounting.

We have disposed of the case upon a different theory from that resorted to in the judgment of the common pleas court. The facts upon which our judgment is based are shown by the undisputed evidence and insofar as the findings of fact are in conflict therewith, we disapprove of the finding.

The judgment of the court of common pleas will be modified in accordance with the above opinion and final judgment entered here in favor of the plaintiffs accordingly, together with an order of sale, and the cause will be remanded to the common pleas court to carry this judgment into effect.