INSURANCE CO. OF NORTH AMERICA
v. FOURTH NAT. BANK OF ATLANTA.*

Circuit Court of Appeals, Fifth Circuit.
November 7, 1928.

No. 5436.

*Rehearing denied December 19, 1928.

934

See, also, 12 F.(2d) 100, and 14 F.(2d) 131.

T. A. Hammond, John M. Slaton, and J. M. B. Bloodworth, all of Atlanta, Ga. (Smith, Hammond & Smith, Slaton & Hopkins, and J. M. B. Bloodworth, all of Atlanta, Ga., on the brief), for appellant and cross-appellee.

Hoke Smith, Morris Brandon, John A. Hynds, and Marion Smith, all of Atlanta, Ga. (Hoke Smith, Brandon & Hynds, and Little, Powell, Smith & Goldstein, all of Atlanta, Ga., on the brief), for appellee and cross-appellant.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. This is an action at law consisting of two counts, the first as for money had and received in the sum of $66,884.33, with interest, and the second for the same amount as damages ex contractu, for an alleged breach of warranty.

While some issues of fact were disputed and submitted to the jury, the following are either covered by stipulation or are not contested, and a recital thereof appears necessary to a proper understanding of the case. Plaintiff is one of the large insurance companies, with the main office of its Southern department in Atlanta, Ga. It handles a large volume of business in that section, and some ten years ago made an arrangement with the defendant bank (the exact terms and effects of which are to some extent in dispute), whereby it would give drafts in settlement of losses suffered by its policyholders, which were handled by all of the banks in Atlanta as checks. These drafts had either printed thereon, or there was pasted thereto a sticker bearing the words, "Present through the Fourth National Bank of Atlanta, Ga."

Plaintiff had in its employ one Cain, whose "duty it was to check the various loss claims sent in to the Atlanta office for payment and approve the correctness of the claims. A draft would be signed by the manager or assistant manager at Atlanta for the amount of the claim, payable to the claimant, to be sent to him or her." Cain conceived the fraudulent scheme of fabricating proofs of loss against outstanding policies of plaintiff company, which he presented, and drafts were drawn in the manner stated upon the plaintiff in favor of the supposed claimants.

He would then abstract the drafts instead of mailing to the policyholders, forge the names of the payees thereon, and deposit them to his own account in the Fulton National Bank of Atlanta, under the name of W. J. Nelson, which he would also indorse upon the drafts. The Fulton bank would indorse them "Fulton National Bank. Paid through Clearing House, Atlanta, Georgia," as of the date deposited, and on the next business day would send them through the clearing house. The rules of the Atlanta Clearing House have an important bearing upon the case, and we quote pertinent portions thereof:

"The hour of making exchanges shall be at 10:30 o'clock, except Saturdays, when the hour shall be 10 o'clock, when a messenger from each one of the Associated Banks shall appear with their respective demands listed separately against each Bank and the total summed up, and after exchanging make known his credit or debit balance to the Manager, who will, when proof is made, issue his check on the debtor member or members, for the amount of their respective balances, without recourse upon any member of the Association after 1:30 o'clock p. m. of same day.

"All checks or other matter received at the Clearing House which shall be found not good, or are returnable for any reason, on examination at the bank on which they are cleared shall be returned at the 'Return Session' of the Clearing House the same day, for exchange in the same manner that items are handled at the morning exchanges, with the same schedule of fines in effect.

"The time for making exchanges of 'Return Items' shall be 1:30 p. m., except on Saturdays, when exchanges shall be made at 1 p. m.; and if items are not returned by that time the responsibility of the bank through which said items have passed shall cease."

The representative of the Fulton National Bank would take such of the drafts as had been deposited along with other items for clearing to the 10:30 session of the clearing house, and a tentative adjustment would be made, in which, after exchanging checks or other charges against each other, the manager of the clearing house would give his check upon the one whose account showed a debit in favor of the other. If any item was returned for any cause at the "return session," then the manager would in turn give check upon the bank which had presented it to the clearing house for the dishonored draft or check. The right to return within the prescribed hours was unlimited. After the drafts were delivered to defendant at the morning session, they were delivered to

plaintiff for its inspection and determination as to payment in time to be returned and credited on that day at the return session of the clearing house. Defendant did not make final payment of any draft until it was taken up by plaintiff's check.

The plaintiff kept with the defendant bank a deposit of approximately $100,000, and, whenever one or more of its drafts by itself upon itself was presented by the Fourth National Bank, it would give a single check upon this account to cover all of the drafts coming in on that day. The defendant never charged any of the drafts to plaintiffs, but always received check therefor.

These fraudulent transactions were carried on by Cain over a period beginning February 18, 1918, and ending September 25, 1922, embracing thirty-eight separate drafts, aggregating $66,884.33, before the plaintiff finally discovered the fact.

In submitting the case to the jury, the lower court took away from it the issues under the first count for money had and received, upon the proof that plaintiff had, after discovering the fraud of its agent, brought suit in the superior court of Fulton county, Ga., against Cain and his wife, to recover property and funds representing proceeds of the fraudulent drafts, upon the theory that it had thereby elected to ratify the action of its agent. Some adjustment of that suit was made by which it is stated, and not denied, that the plaintiff received certain property and funds from Cain and his wife, but the suit was not dismissed, no doubt because of the subsequent bringing and pendency of the present action. In such circumstances, we think the lower court was correct in holding that the plaintiff had made an election to pursue the property and funds in the hands of its agent, and could not thereafter maintain its claim for money had and received against defendant. Leather Manufacturers' Bank v. Morgan, 117 U. S. 96, 6 S. Ct. 657, 29 L. Ed. 811; Robb v. Vos, 155 U. S. 39, 15 S. Ct. 4, 39 L. Ed. 52; United States v. Oregon Lumber Co., 260 U. S. 290, 43 S. Ct. 100, 67 L. Ed. 261; Equitable Trust Co. v. Connecticut Brass Corp. (C. C. A.) 10 F.(2d) 913; Henry Haas & Son v. Twenty-Third Ward Bank, 200 App. Div. 895, 192 N. Y. S. 929; Fowler v. Bowery Savings Bank, 113 N. Y. 450, 21 N. E. 172, 4 L. R. A. 145, 10 Am. St. Rep. 479; Crook v. First National Bank, 83 Wis. 31, 52 N. W. 1131, 35 Am. St. Rep. 17; Equitable Life Insurance Society v. May, 82 Ga. 646, 9 S. E. 597.

As to the issue of warranty, the rights of the parties depend upon the question of whether or not the defendant was the owner of these drafts when they were presented to, and paid by, plaintiff. Two propositions were submitted to the jury involving issues of fact: First, the contention of defendant that, under the agreement by which it was to handle the drafts, it became the agent merely of the plaintiff for its convenience in collecting them, assuming no responsibility as a bank or indorser thereof; and, secondly, if not the plaintiff's agent, that it was the agent of the Fulton Bank in presenting them for payment, and plaintiff's remedy was against the latter institution alone. As stated, both propositions involve issues of fact, as to which, to say the least, the evidence tended rather strongly to establish that the defendant was acting merely as the agent and for the convenience of plaintiff; but, if it was not, then it was shown that under the clearing house rules defendant had the right to return such items within the hour specified, and, if they were paid by plaintiff during that time, it was for the benefit of the Fulton National Bank. If paid after the hours named in the written rules of the clearing house, then there was another question of fact as to whether there had been a modification thereof by common consent of the banks in Atlanta, whereby such items could be returned at any time during the afternoon of the same day. There was evidence on the latter point both ways, and the court below submitted the issue to the jury, with the instruction that the burden was upon the defendant to establish such a defense by a preponderance of the evidence. It, the jury, evidently decided one or all of these controverted issues adversely to plaintiff, for the verdict was "for the defendant." In any event, there was substantial evidence to show that plaintiff understood the effects of the rules of the clearing house, which, together with the nature of the indorsement of the Fulton Bank above quoted, that the drafts were paid "through" that source, were sufficient to charge plaintiff with knowledge that the original stamp of payment was not unconditional.

Under this state of the record, we can find no reason to disturb the judgment below. It is true that numerous exceptions were taken to the charge of the court and to its refusal to give certain requested instructions. However, careful examination of the whole charge serves to convince us that all of the material points were properly covered, and there was no error in refusing to give the charges specially requested.

Other points are raised with respect to

the rulings of the lower court upon exceptions and demurrers to the pleadings, as well as to the admissibility of certain evidence, but, without going into detail, it is sufficient to say that we find nothing therein which, in our opinion, warrants a reversal of the lower court, and its judgment is accordingly affirmed.