## NATIONAL SURETY CO. v. PERTH AMBOY TRUST CO.

### No. 5481.

Circuit Court of Appeals, Third Circuit.

Feb. 21, 1935.

Autenrieth & Wortendyke, of Newark, N. J. (Reynier J. Wortendyke, Jr., Newark, N. J., of counsel), for appellant.

Collins & Corbin, of Jersey City, N. J. (Edward A. Markley, of Jersey City, N. J., of counsel), for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

Peterson, an agent of the Metropolitan Life Insurance Company, swindled that company out of a large sum of money of which only a part is here involved. So far as this case is concerned, he did it in this way: Representing the Insurance Company in soliciting life insurance and delivering checks in paying insurance claims and having access to its papers and forms, Peterson fabricated applications and obtained policies upon the lives of thirteen fictitious persons and upon the lives of four real persons who knew nothing about it. He paid the premiums. Then, from time to time, he filed with the Insurance Company bogus claims of death of the supposed policy-holders and received from the Insurance Company checks for fictitious claimants. He forged the endorsements and deposited the checks in his account with the Perth Amboy Trust Company under the assumed name of John Purcell. That banking institution, in the ordinary course of business, forwarded the checks, with endorsements guaranteed, to the Chase National Bank of the City of New York, the drawee, for collection. Chase paid them and, the Insurance Company being a depositor, debited the payments to its account. Thus on the face of things Peterson's account with the Trust Company seemed good. Accordingly he checked out the money and walked away with it.

The Insurance Company held a bond of the National Surety Company, known as a "Depositor's Forgery Bond," running to the Insurance Company and to its banking depository for $100,000, under which the Surety Company indemnified the Insurance Company for its total direct losses in the amount of $41,716.24, later reduced by salvage from several banks, similarly afflicted, to $22,519.43, and thus (it would seem) relieved Chase, the banking depository and drawee of the checks, from liability for paying them with forged endorsements. Regarding itself as subrogee of the Insurance Company and also subrogee and assignee of Chase, the Surety Company brought this suit in assumpsit against the Trust Company on its guaranty of endorsements to recover $13,639.57, the face amount of the seventeen checks which it had collected from Chase and paid out to Peterson.

At the trial the learned court directed a verdict for the defendant Trust Company and from the judgment that followed the plaintiff Surety Company appealed.

There, as here, many questions were raised—whether the fraudulent endorsements on thirteen checks drawn to fictitious persons constitute forgeries; whether there was evidence that the endorsements on the

remaining four checks to payees, still alive but ignorant of the transactions, were forgeries; if so, whether a cause of action arose in favor of Chase, the drawee, against the defendant Trust Company on its guaranty of endorsements; whether by paying the Insurance Company the Surety Company became subrogated to its cause of action and to Chase's cause of action against the Trust Company; and still others not necessary to recite.

Aside from these questions, in which there are more or less valid disputes in law, we think, however they should be resolved, the whole case turns and should be decided on one other question raised by the Trust Company at the trial and not satisfactorily answered by the Surety Company on this appeal. It goes directly to the plaintiff's right of action and arose out of these circumstances:

Upon discovery of the fraud, with knowledge of all the facts and before the Surety Company indemnified it under the forgery bond, the Insurance Company instituted two suits against Peterson, its agent: One in the Supreme Court, for the County of Richmond, State of New York; the other in the Supreme Court, for the County of Middlesex, State of New Jersey.

The suits were in trover, or, if not nominally so, the gravamen of the actions was conversion. The Insurance Company obtained judgment in both suits and recovered from Peterson thereunder about $7,-500, which reduced its losses and correspondingly reduced the liability of the Surety Company on the forgery bond. In the instant suit by the Surety Company, claiming subrogation to the rights of the Insurance Company, the defendant Trust Company at the trial urged in its motion for a directed verdict that at the outset the Insurance Company, aside from an action against the Surety Company on the bond, had available two remedies: One against Chase for moneys diverted from its account by payment of checks with forged endorsements; and one against Peterson for conversion; that in instituting the two suits and recovering judgments against Peterson it elected the latter remedy; that in doing so it necessarily ratified or affirmed the fraudulent acts of Peterson, its agent, and thereby the Insurance Company, and all claiming under it, are estopped to proceed, by disaffirming its agent's acts, in another suit against another party on another cause of action inconsistent with the first two. And this the defendant Trust Company says

must be so, as the Insurance Company's two actions against Peterson were tried on the theory that the moneys which he obtained were moneys which belonged to it, else conversion of its moneys by Peterson could not be possible. The moneys could be deemed to belong to the Insurance Company only if the checks had been properly paid by the Trust Company and by Chase. If, on the concession of the Insurance Company, necessarily implied in its form of action, that its moneys, coming into Peterson's hands, were properly paid to him, the actions against Peterson for conversion of the Insurance Company's moneys were, on proof of conversion, a complete remedy. In consequence, the Insurance Company would not thereafter have a cause of action against either Chase or the defendant Trust Company for improperly paying the checks. Yet, after election of one remedy by the Insurance Company (the obligee of the Surety Company in the forgery bond) in its two suits against Peterson, the Surety Company, which had already profited thereby, now in the instant case, as subrogee of its obligee in the bond, seeks or elects the other remedy against the Trust Company on the ground that because of forgeries and guaranteed endorsements the Trust Company improperly paid the checks, that is, on a ground of action entirely inconsistent with that of the Insurance Company, its obligee, in its suits against Peterson.

It is difficult to understand how the Surety Company could acquire by subrogation a right of action which its obligee on the bond lost when it elected to sue Peterson. When a party having available two inconsistent remedies elects one with its legal implications and prosecutes it to judgment he is precluded from prosecuting the other. This is a rule of universal application. Indeed, it was invoked and applied in this very fraudulent scheme where Paul Cohen cashed one of the Insurance Company's checks with Peterson's forged endorsement. He in turn endorsed it and in due course it was forwarded to Chase for collection. The check was paid. Upon discovery of the fraud, however, Chase charged the amount of the check to the forwarding bank, and that bank in turn charged it to Cohen's account. Cohen instituted suit in the Supreme Court of New York against the Insurance Company to recover the amount of the check on the theory that by its suits against Peterson it had elected to treat the wrongdoer as its agent, had ratified his fraudulent acts in order to recover

on the theory of his conversion of its money, with the admission necessarily implicit in the actions that the endorsements on the checks were proper. The trial court, holding the Insurance Company to its election and refusing its defense of forgery, gave judgment for the plaintiff. The Appellate Term reversed the judgment (Cohen v. Ins. Co., 146 Misc. 890, 262 N. Y. S. 475) and on appeal the Appellate Division reversed the Appellate Term and affirmed the judgment of the trial court. Cohen v. Metropolitan Life Insurance Co., 238 App. Div. 789, 262 N. Y. S. 478; Id., 238 App. Div. 847, 262 N. Y. S. 952. That decision and the general proposition advanced by the Trust Company are sustained by a long line of authorities, of which these are a few: Fowler v. Bowery Savings Bank, 113 N. Y. 450, 21 N. E. 172, 4 L. R. A. 145, 10 Am. St. Rep. 479; Heller v. Elliott, 44 N. J. Law, 467; Id., 45 N. J. Law, 564; Equitable Life Assur. Soc. v. May, 82 Ga. 646, 9 S. E. 597; Nicholson v. Janeway, 16 N. J. Eq. 285; Insurance Company of North America v. Fourth National Bank (C. C. A.) 28 F.(2d) 933; Id., 279 U. S. 853, 49 S. Ct. 349, 73 L. Ed. 996; Williams v. Barnes (C. C. A.) 63 F.(2d) 722; Robb v. Vos, 155 U. S. 13, 15 S. Ct. 4, 39 L. Ed. 52; United States v. Oregon Lumber Co., 260 U. S. 290, 43 S. Ct. 100, 67 L. Ed. 261; Scarf v. Jardine (House of Lords 1882) 7 A. C. 345, 51 L. J. Q. B. 612, 47 L. T. 258, 30 W. R. 893.

In addition to its claimed right of action as subrogee of the Insurance Company, the Surety Company claimed a right of action against the Trust Company on its guaranty of endorsements as subrogee and assignee of Chase.

As subrogee of Chase, that is, as a "substitute" for Chase, the Surety Company did not acquire a right of action greater than or different from the right of action, if any, which Chase had; and certainly it did not acquire a right of action which Chase did not have.

The right of action which Chase at one time may have had against the Trust Company arose out of its liability to make good to the Insurance Company its losses and out of the Trust Company's guaranty of endorsements. But when the Insurance Company elected to sue Peterson (long before it was indemnified by the Surety Company) it lost its right to sue Chase and, through Chase, a right to sue its forwarding banks. Chase had not then (so far as we can learn from the record) made good the losses nor was it thereafter liable to an action by the Insurance Company; hence it no longer had a right of action against the Trust Company on its guaranty of endorsements, to which the Surety Company could be subrogated.

As assignee of Chase the Surety Company is no better off. Here dates are important. Peterson's frauds were committed between June 14, 1929, and April 4, 1930. The Insurance Company instituted its two suits against Peterson on June 27, 1930. The Surety Company paid the Insurance Company indemnity under its forgery bond on May 18, 1931. Chase assigned its right of action on the Trust Company's guaranty of endorsements to the Surety Company on March 7, 1932, and the Surety Company instituted this suit against the Trust Company on April 15, 1932.

The claimed right of action of the Surety Company as assignee of Chase (which is very much the same as its claimed right of subrogation from Chase) is based on the right of action which Chase perhaps originally had against the Trust Company on its guaranty of endorsements and on its liability to pay the Insurance Company for its losses. But Chase was relieved of its liability for honoring checks with forged endorsements and therefore lost its right of action against the Trust Company when the Insurance Company elected to sue Peterson for conversion, which was nearly a year before the Surety Company indemnified the Insurance Company under the forgery bond. Being thus relieved of its liability to the Insurance Company and, in consequence, not having suffered any loss for honoring checks with forged endorsements, and not being liable to suffer any loss in the future, Chase did not have, when it assigned its rights of action to the Surety Company, any action or right to sue the Trust Company on its guaranty of endorsements. Having no such right, it could not validly assign such a right to the Surety Company. Therefore the Surety Company acquired nothing by the instrument of assignment, executed in its favor by Chase, on which it relies for its right of action in this suit as assignee of Chase.

We are of opinion that the actions by the Insurance Company against Peterson definitely fixed its rights at law and the rights of others claiming under it which include Chase and the plaintiff Surety Company. As the plaintiff Surety Company had no rights in the premises different from or

greater than those of the Insurance Company, its obligee in the forgery bond, and as that company, after electing actions against Peterson, had no right to institute a suit like this one against either Chase or the Trust Company, it follows that the plaintiff, as subrogee of the Insurance Company and subrogee and assignee of Chase, is without a cause of action in this suit. Accordingly the learned trial judge committed no error in directing a verdict for the defendant.

The judgment is affirmed.