Rocco Commisso, Plaintiff, *v.* The National City Bank of New York and Queens County Savings Bank, Defendants.*

Supreme Court, Trial Term, Queens County, May 22, 1939.

* Affd., 259 App. Div. 891.

*Shapiro & Schlissel* [*J. Irwin Shapiro* of counsel], for the plaintiff.

*Shearman & Sterling* [*Lester Kissel* of counsel], for the defendant The National City Bank of New York.

*Thomas E. White* [*William E. Robinson* of counsel], for the defendant Queens County Savings Bank.

FROESSEL, J. By this action, as the pleadings stand at the close of the trial, plaintiff seeks to recover from the defendant The National City Bank of New York, hereinafter called the "City Bank," the sum of $5,190.71 and interest, the alleged balance in his account in the compound interest department of said bank. A second cause of action in plaintiff's amended complaint against the defendant Queens County Savings Bank, hereinafter called the "Queens Bank," was discontinued at the opening of the trial. The City Bank's answer, after certain denials, sets up as defenses (1) payment, (2) payment within the terms of the agreement between said bank and the plaintiff on the opening of said account, and (3) ratification of payment. The said bank, by a supplemental pleading allowed by an order of this court, impleaded the Queens Bank, and asserted a claim over against the latter bank, in the event that the City Bank is liable to the plaintiff. The Queens Bank, by its answer, denied its liability, claiming in effect that payment by it constituted it a holder in due course, and that in any event the City Bank is estopped by its own negligence.

The controversy arises out of alleged forgeries. Prior to December 31, 1932, plaintiff opened a lira account with the 680 Broadway branch of the defendant City Bank, signing a ledger card (Exhibit G) and a signature card (Exhibit Y). The genuineness of these signatures is undisputed. On November 25, 1935, plaintiff executed and delivered to his wife, Josephine Commisso, a power of attorney to exchange the lira to United States dollars " and *deposit* the proceed *in dollars special account in my name* as Rocco Commisso" (Exhibit 4). She thereupon proceeded with said power of attorney to the said branch office of the City Bank, and, without any further authority, signed her name to a temporary signature card (Exhibit C), and was given a white signature card and a white slip of paper, to have signed by the plaintiff. She returned the white " signature " card and the white slip of paper, a torn portion of which was thereupon pasted upon a ledger card (Exhibit F), both containing the name " Rocco Commisso." Plaintiff denies that these are his signatures, and here is where the difficulty begins, for all subsequent comparisons were made with these disputed " signatures." The

bank did not require plaintiff's personal appearance before one of its officers, did not require his signature acknowledged before an officer authorized to take acknowledgments, did not require a witness, and did not even keep in its current files the previously obtained authentic signatures (Exhibits G and Y). This practice, in my opinion, is unnecessarily loose, careless and perilous, notwithstanding the so-called "approval" of the alleged "signatures" by an officer of the bank, after an alleged comparison, which, by the way, was not directly proven; it was claimed to have been done as a business practice.

In any event, the lira account was closed, the converted dollars, $5,190.71, credited (Exhibit D) to plaintiff in a commercial interest department account, except the sum of $100, for which a check to his order was made, without, however, any apparent authority from him. This check (Exhibit H) was delivered to his wife. It bears the indorsement "Rocco Commisso," which plaintiff denies is his signature, following which is the indorsement of his wife, admittedly her own. Thereafter and on January 18, 1936, she presented a draft for $90, purportedly signed by plaintiff, which was paid (Exhibit I). On February 3, 1936, she presented another draft, purportedly signed by plaintiff, for $100, which was also paid (Exhibit J). Plaintiff denies signing either of these drafts, and defendant's handwriting expert supports his contention. On the same day she requested the defendant Queens Bank to transfer the moneys on deposit in plaintiff's account in the City Bank to a new account of the plaintiff in the Queens Bank. The latter bank followed substantially the same loose procedure with respect to the opening of this new account as did the City Bank, and gave to plaintiff's wife two signature cards and a draft for the moneys on deposit with the City Bank, to be signed by the plaintiff. She returned them to the Queens Bank with the purported signatures of the plaintiff, which he denies, and in which denial he is again supported by defendant's handwriting expert. As to these signature cards, it was conceded that they are forgeries. As to the draft for the balance of plaintiff's moneys (excluding interest) in the City Bank, to wit, $4,905.36 (Exhibit K), plaintiff's wife, who was produced at the trial by said defendant from Bedford Reformatory, where she is serving a sentence for forgery in connection with another transaction, refused to answer questions with regard thereto, as well as to other signatures, upon the ground that they might tend to incriminate or degrade her.

The next day the City Bank paid the said balance with interest, amounting to $4,909.94, by a cashier's check to the Queens Bank, which thereupon credited same to an account in plaintiff's name.

Within about a year and a half thereafter, this entire amount was withdrawn from the Queens Bank by concededly forged withdrawal slips presented by plaintiff's wife. Meanwhile, it appears that an account was opened in his name in the sum of one dollar in the Corona branch of the defendant City Bank (Exhibit 7), and, to deceive plaintiff, there were torn from the pass book evidencing said deposit the first and second pages, and on the third page, the amount $5,090.71 was typewritten, as appeared in the true bank book. Of course, when plaintiff sought to withdraw moneys upon presentation of this false bank book, he finally learned what had happened.

Many of the alleged forgeries are either conceded or are not seriously disputed. Upon the evidence before me, I feel constrained to adopt plaintiff's claim that Exhibits B, F, H, I, J, K, Q, R and the withdrawal slips of the Queens Bank do not bear the signature of the plaintiff, and were not signed by his authorization. Accordingly, the first defense of payment by the City Bank cannot be sustained.

But said defendant then contends that " even if those withdrawal orders and draft do not bear the signature of the plaintiff, nevertheless, the payments are valid against the plaintiff, because the defendant City Bank paid out the money against presentation of the original Pass Book " (Defendant's Exhibit E). In that connection, it relies particularly upon the first sentence of section " (4) " of its by-laws, the entire section reading as follows: " Any payment to the person presenting the pass book shall be valid as against the depositor and a full and effectual release of the Bank as to such payment, unless the Bank shall have been previously notified in writing by the depositor that the pass book has been lost or stolen or has otherwise come wrongfully into the hands of a third person. Should the depositor wish any other person to withdraw money, such person must present the pass book together with an order signed by the depositor, on a form similar to that printed on the last page of the pass book. A power of attorney may be filed with the bank authorizing a person other than the depositor to make withdrawals."

In answer thereto, plaintiff urges, *first*, that he can neither read nor write English, and that the rule was never called to his attention; *second*, that according to the very language of the by-law invoked, the defendant is clearly liable; and *third*, that, in any event, the defendant did not prove the exercise of due diligence and care, as required by the authorities. Assuming that the rule as to the responsibility of savings banks for payments made upon forged drafts applies in the case of an account in a commercial bank as is

here involved, and that plaintiff's ignorance and inability to read and his unfamiliarity with the by-law in question cannot be availed of by him, it nevertheless appears to me that said section " (4) " of the City Bank's by-laws, when read in its entirety, does not help said defendant, by reason of its second sentence. While under the first sentence it provides that " any payment to the person presenting the pass book shall be valid as against the depositor and a full and effectual release of the Bank as to such payment," yet I think this is clearly qualified by the second sentence, which provices that " should the depositor wish *any other person* to withdraw money, such person *must* present the pass book *together with an order signed by the depositor.*" The mandatory requirement of this second sentence cannot have been intended to be utterly meaningless and inoperative, and a depositor reading this by-law in its entirety, is justified in the conclusion that *unless* the pass book " together with an order *signed by the depositor* " is presented, the bank will not pay. And in this case, the bank could not possibly have mistaken her for the depositor presenting his own pass book, for she was of a different sex. In this connection, the following language from *Smith* v. *Brooklyn Savings Bank* (101 N. Y. 58, 62), which authority appears to be controlling here, is particularly appropriate: " If the bank were authorized to make payments to a stranger, having possession of the pass-book alone, the provision authorizing the bank also to make such payments to a stranger, not only having possession of the pass-book, but also of the depositor's written order, would be useless and unmeaning." Certainly, any ambiguity must be resolved against the bank. (*Taylor* v. *United States Casualty Co.*, 269 N. Y. 360, 364.)

In any event, the City Bank was obligated to use not alone due care and diligence but active vigilance in paying out the plaintiff's moneys, in order that he might be protected from fraud, larceny and forgery. (*Kummel* v. *Germania Savings Bank*, 127 N. Y. 488, and cases therein cited, particularly *Allen* v. *Williamsburgh Savings Bank*, 69 id. 314, criticizing *Schoenwald* v. *Metropolitan Savings Bank*, 57 id. 418, upon which City Bank places much reliance.) Reference has already been made to the loose method whereby said defendant sought to secure the " signature " of the plaintiff. It has also been pointed out that there was no direct proof that Exhibits B and F were ever actually and in fact compared with plaintiff's authentic signatures in the bank's possession (Exhibits G and Y). Reliance was placed on a course of doing business, which may or may not have been followed here. All subsequent comparisons of the withdrawal slips and the draft were made with these purported signatures of the plaintiff (Exhibits B and F),

furnished by his wife, a convicted forger. Furthermore, even the handwriting expert produced by the defendant City Bank in effect conceded that the withdrawal slips and final draft by which it paid out the moneys in the dollars account were forgeries. If he, their own witness, could discover this, could not their bank tellers and officers, who claim to have made the comparisons, and who professed to have much experience with signatures, have discovered at least one of them? Upon the evidence in this record, I am constrained to hold that the City Bank has failed to sustain the burden of proving its defense in this regard. (*Noah* v. *Bowery Savings Bank*, 225 N. Y. 284.)

Nor can its third defense of ratification, based upon plaintiff's pleading a second cause of action in its amended complaint against the defendant Queens Bank, be sustained. This cause of action was discontinued and withdrawn at the opening of the trial. It is as though it had not been asserted. The cause of action against the City Bank was at all times asserted and at no time relinquished. There was no ratification here. (*Schenck* v. *State Line Telephone Co.*, 238 N. Y. 308.) In *Fowler* v. *Bowery Savings Bank* (113 N. Y. 450), cited by defendant City Bank, a judgment had been recovered against one Flynn, and after unsuccessful efforts to collect, then the second suit was instituted against the bank, an altogether different situation from the instant case.

In the light of the foregoing views, I will grant judgment to the plaintiff against the defendant The National City Bank of New York in the sum of $5,190.71 and interest.

As to the claim of the City Bank against the Queens Bank, the case of *Greenwich Bank* v. *Chatham & Phenix Nat. Bank* (221 App. Div. 857; affd., 249 N. Y. 612) is clearly controlling. The Queens Bank was not a holder for value. In the first place, it followed the same loose method in attempting to procure the signature of the plaintiff, as already referred to. It then paid out to plaintiff's wife, by steady and frequent withdrawals (Exhibit S) in the form of forty-nine separate, concededly forged orders and drafts, the entire amount collected, nearly all of which was drawn out in less than a year. Plaintiff never saw the pass book of the Queens Bank, and indeed never knew there was such an account; thus he can in no wise be bound by its rules. Judgment over will, therefore, be granted in favor of the National City Bank of New York and against the Queens County Savings Bank in the sum of $4,909.94 and interest.

Submit judgment on notice.